511 P.2d 739

JELCO, INCORPORATED, a Utah corporation, Plaintiff,

v.

THIRD JUDICIAL DISTRICT COURT et al., Defendants.

No. 13023.

Supreme Court of Utah.
June 29, 1973.

474

---

Robert S. Campbell, Jr., and David K. Watkiss, Salt Lake City, for plaintiff.

Raymond T. Senior, Sanford S. Smith, Allen H. Tibbals, Salt Lake City, for defendants.

CROCKETT, Justice:

This controversy arises out of a proceeding by Salt Lake City to condemn about 385 acres of land for expansion on the west of its municipal airport, which land was the subject of a contract of sale from Thomas E. Jeremy, his wife, and Grace Jeremy Cassaday to Jelco, Inc., the vendee's assignee. The City moved for an order of immediate occupancy, and in connection therewith deposited in court 1.4 million dollars which was the City's appraisal of the land.[1]

The vendors (herein referred to as Jeremy) applied to the district court for a determination of the "just compensation" for

their interest in the lands, and for an order allowing them to withdraw the same. Jelco objected to that proposal and particularly urged that evidence should be presented as to the propriety of making such an order. Nevertheless, on the basis of the arguments and representations made by respective counsel the trial court determined Jeremy's interest to be $239,500, the aggregate of four remaining annual payments Jeremy would receive under the contract of sale, plus interest of $6,552.99, and ordered the total of those sums, $246,052.99 released to Jeremy.

Jelco sought relief from that order in this court, contending that it was in error; and particularly so because the court acted peremptorily, without allowing the presentation of evidence; and that the order had the inequitable effect of allowing Jeremy the immediate delivery of the just less than a quarter of a million dollars which was in fact more valuable than that sum collectable over the four year period; and further, that it allowed them full compensation for one tract, number 11, the major part of which was not included in the condemnation.

1. Sec. 78–34–9, U.C.A.1953, provides, ". . . If the motion is granted, the court . . . shall enter its order requiring the plaintiff as a condition precedent to occupancy to file with the clerk of the court a sum equivalent to at least 75% of the condemning authority's appraised valuation of the property sought to be condemned . . . The rights of just compensation for the land so taken . . . shall vest in the parties entitled thereto, and said compensation shall be ascertained and awarded as provided in Section 78–34–10 . . . Upon application of the parties in interest, the court shall order that the money deposited in the court be paid forthwith for or on account of the just compensation to be awarded in the proceeding."

The 385 acres here in question is part of a larger tract of 700 acres which the Jeremys had contracted on Dec. 1, 1965, to sell to Jelco's predecessor. The purchase price was $631,500, plus interest, which was to be paid $32,000 down, and thereafter in 10 annual installments. The land was designated in 11 separate parcels. The deeds were placed in escrow under instructions that as each annual payment was made, the deed to a particular parcel was to be delivered, and upon the receipt of the final (tenth) payment, the deeds to parcels 10 and 11 were to be delivered. The contract had been performed according to its terms up to the time the city commenced the condemnation action; but there remained four annual installments yet to be paid, and the deeds to parcels 7 through 11 had not yet been delivered.

 It is desirable to have in mind certain general principles applicable to the problem here confronted: i. e., whether, under the facts as above stated, the trial court was justified in ordering the withdrawal by the vendor Jeremy of the total $246,052.99, that it was to receive under the contract in the ensuing four years. In such an executory contract the vendee

(Jelco) acquires all of the incidents of ownership except legal title. He is therefore in equity properly regarded as the owner of the property.[2] Thus, in the absence of an agreement to the contrary, where a condemnor takes land subject to an executory contract, it is the vendee who is normally entitled to any condemnation award for the land so taken.[3] It is he who is entitled to the benefit of any increase and who must bear the detriment of any decrease, in the value of the property; whereas, the vendor (Jeremy) has only legal title. In regard to the purchase price, what he is entitled to is to have it paid in accordance with the terms of the contract. He is of course also entitled to retain the legal title as security for its performance, and in case of default, to seek the remedies provided therein.

 It is to safeguard the owners of the respective interests in condemned property that our statute, Sec. 78–34–9, U.C.A.1953, provides that after the condemnor deposits money in court, it shall upon proper application, order it to be paid to the "parties in interest." Notwithstanding what has been said above recognizing that the equitable ownership of the condemned property is in the vendee (Jelco), as the one normally en-

---

2. Willson v. Utah State Tax Commission, 28 Utah 2d 197, 499 P.2d 1298 (1972); Allred v. Allred, 15 Utah 2d 396, 393 P. 2d 791 (1964).

3. Brigham City v. Rich, 34 Utah 130, 97 P. 220 (1908). The vendee was allowed

to receive the entire award however the vendor did not complain and the court did not decide whether the vendor would be entitled to any part of the award. See Annot., 27 A.L.R.3d 572, 592–597.

titled to the condemnation award, the security interest of the vendor (Jeremy) must also be safeguarded. For these reasons the statute also provides that " . . . the court shall make such orders in respect to encumbrances, liens . . . as shall be just and equitable." The court is thus clothed with authority to make appropriate orders with respect to the withdrawal of funds that to him seem practical and just and in conformity with the desired objective of safeguarding the interests of those who have a stake in the outcome of the condemnation proceedings.[4]

■ It should be carefully noted that if the court orders that money paid in by the condemnor be paid over to any condemnee, it should be done in such manner as to make it clear that payment by a condemnor and acceptance by one condemnee does not adversely affect the right of any other condemnee to assert any rights or defenses he may have. That this is the way this statute should be understood and applied is indicated by the further provision of Sec. 78–34–9 that:

A payment to *a defendant* as aforesaid shall be held to be an abandonment *by such defendant* of all defenses excepting his claim for greater compensation.

■ We note our agreement with the trial court that it should exercise the authority granted in Sec. 78–34–9 referred to above to pay the funds deposited to the parties entitled thereto, as their interests appear, at the earliest time that can safely and prudently be done. This serves the salutary purposes of expeditiously paying over the money to the person entitled to it, and of avoiding having money remain idle and unproductive. However, in regard to the problems as to when and how much of the money is to be paid over and to what "parties in interest," it is to be noted that the next succeeding section, 78–34–10, which provides for the procedure in assessing damages states that:

The court . . . *must hear such legal evidence as may be offered* by any of the parties to the proceedings, and thereupon must ascertain and assess: (1) *The value of the property* sought to be condemned . . . and of each *and every separate estate or interest herein;* and if it consists of different parcels, the value of each parcel and of each estate or interest therein shall be separately assessed. . . .

■ The difficulty here is that the trial court rejected Jelco's proposal to present

---

4. When necessary to take appropriate action to safeguard the vendor's security interest, various measures are available. See Trickey v. Zumwalt, 83 N.M. 278, 491 P.2d 166 (1971), where it was stated that when the vendors security is condemned, the award (which was the preliminary deposit prior to the final award) stands in place of the land and is security for the vendors purchase price and is subject to liens just like the land. Also see Dye v. Schick, 74 Ind.App. 459, 129 N.E. 242 (1920) ; Arko Enterprises, Inc. v. Wood, 185 So.2d 734 (Fla.App.1966).

evidence on what it argues are issues of fact which should be determined before the court could make a correct and well- advised order. Without desiring to indicate any pre-judgment on the issues, in view of the conclusion we have reached: that this matter should be remanded for further proceedings, we think it advisable to make certain observations concerning Jelco's contentions.

From the position asserted by the vendor Jeremy, and the memorandum decision of the trial court, it appears that one of the substantial reasons for the order of withdrawal was an apprehension that there might be default by Jelco, and that inasmuch as lands subject to the contract were taken by the city, there might not remain sufficient security to guarantee performance of the contract. While the facts concerning that contention have not been determined, the parties are in sharp disagreement thereon. It is also significant to note that the city did not condemn all of parcel 11, by far the largest piece of land. The major portion thereof, approximately 300 acres, remained unaffected. The city's valuation of that parcel was $2,000 per acre, so the remaining 300 acres should have a value of around $600,000. This acreage would remain in the ownership of Jelco, and would seem to be ample security to guarantee the payment of the remaining $246,000.

■ Our final comment is upon Jelco's objection to the immediate payment to Jeremy of the total proceeds it was to receive under the contract over a period of four years. Assuming that upon a full disclosure of the facts the trial court would be justified in ordering release of funds to Jeremy, that should be done according to the correct value of the latter's interest in the land, which as stated above was the right to receive the remaining payments under the contract. Jeremy's contention, which was adopted by the trial court, was that just compensation for their interest was simply a totaling up of all of the amounts they would eventually receive under the contract. This is of course the maximum amount which they could receive. But it is not necessarily the fair market value of their interest in the property. Nor does it follow that, whatever the correct amount of money may be, it should be paid over forthwith. It is obvious that a quarter of a million dollars paid in hand immediately, is of greater value that that amount to be paid over a period of four years.[5]

Upon the basis of what has been said herein it is our opinion that the trial court should allow Jelco the opportunity it sought of permitting the parties to present evidence and to make their contentions with respect to the advisability of the payment over of the funds in question and, if

5. See Dye v. Schick, 74 Ind.App. 459, 129 N.E. 242 (1920).

**478**

so, to determine the correct amount thereof. The case is remanded for that purpose. No costs awarded. (All emphasis added.)

CALLISTER, C. J., and ELLETT and TUCKETT, JJ., concur.

HENRIOD, J., does not participate herein.