ISLAND-GENTRY JOINT VENTURE, HAWAIIAN PACIFIC INDUSTRIES, INC., Plaintiffs-Appellants, *v.* STATE OF HAWAII, through its STATE BOARD OF LAND AND NATURAL RESOURCES, Defendants-Appellees

NO. 5772

SEPTEMBER 9, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by Island-Gentry Joint Venture and Hawaiian Pacific Industries, Inc. (collectively called HPI) from a judgment of the trial court. In an action sounding in damages of $75,468.04 for breach of contract for the sale of land and alternatively, for the enforcement of a promise on the part of the State of Hawaii (State) to pay $75,468.04, instituted by HPI against the State, the trial court granted summary judgment in favor of the State and denied HPI's motion for summary judgment.

For reasons stated hereinafter, we reverse the grant of summary judgment to the State, but affirm the denial of HPI's motion.

ISSUES

1. Did the State make a legally binding promise to pay $75,468.04 to HPI?

2. Did the trial court err in holding, as a matter of law, that, where HPI resells the subject land for $1,235,000.00 to a third party eight months after the contractual breach, and the purchase price in the subject breached contract was $588,022.40, HPI is precluded from recovering its damage claim in the amount of $75,468.04?

## STATEMENT OF THE CASE

The State, through its Board of Land and Natural Resources (Board), offered to purchase, for a school site, 9.642 acres of land owned by HPI and located in Waimalu and Kalauao, Ewa, Oahu. HPI agreed to sell and the parties agreed to the purchase price of $588,022.40.

The agreement was achieved after a lengthy negotiation. The Board prevailed upon HPI to stop any further installation of site improvements on three acres of the desired acreage involving twenty house lots. HPI had cleared and graded the three acres and was in the process of installing site improvements for residences to be constructed on the acreage.

A little over a month after the agreement, the Board, by letter dated May 26, 1970, requested permission of HPI "that the purchase offer for the site be withdrawn." On June 9, 1970, HPI, by letter, agreed to rescind the agreement subject, however, to the following: "We reserve the right to initiate whatever action is deemed necessary to recover damages incurred because of the undue delays and the cancellation of said agreement to purchase".

On October 23, 1970, after considerable negotiation, the Board approved payment of $75,468.04 to HPI for damages incurred by HPI resulting from State's failure to proceed with the purchase of the land. The damages covered interest, taxes, and increased cost to redevelop the site for houselots.

On January 8, 1971, the Governor of the State approved an allotment advice of $77,000.00 stating "to finance rescission of a land acquisition agreement to purchase land . . . subject to favorable comment by A.G. [the State Attorney General] on review of matter". Later, on February 2, 1971, the Governor wrote a letter to HPI assuring its president that he [the Governor] had approved the release of the funds and that "[u]pon completion of certain established requirements, you [HPI's president] will be notified by the appropriate state agency that the matter can proceed further toward closure".

Sometime in February, 1971, HPI resold the subject land to a third party for $1,235,000.00.

On September 24, 1971, the Attorney General refused to approve the payment of the agreed $75,468.04. The Attorney General premised his rejection solely on the ground that the resale of the subject land for $1,235,000.00 clearly showed that HPI suffered no damage resulting from State's failure to honor its agreement to purchase the land.

Though the termination of the sale agreement had been originally termed as a mutual rescission of the agreement by the parties herein, subject to the condition imposed by HPI, it appears from the record that all the parties, including the trial court, have treated the claim for relief asserted by HPI as a question of damages for breach of contract. The complaint in the court below shows that HPI has also asserted a claim for relief premised on the State's promise to pay the specific sum of $75,468.04. However, HPI has not asserted, in the court below or before this court, that the sum of $75,468.04 restores them to their original position based on a rescission of the contract in question.

The State admits of its breach of the sales contract, but has refused to pay any damages, alleging that HPI suffered no damage from the State's breach. In addition, the State, in its answer to HPI's complaint in the court below, denied any liability to pay the Board's agreed-to settlement or promise to pay $75,468.04, upon the ground that "there was no consideration for said sum and that said claim is illegal, contrary to public policy, and would constitute an unlawful and illegal payment of public funds".

The State sought summary judgment "on the ground that the pleadings and Exhibits attached to the Memorandum in support of Defendant's [State's] Motion, show that no genuine issue of material fact is presented, and Defendant is entitled to judgment as a matter of law".

In response to the State's motion, the trial court issued an order granting summary judgment to the State stating: ". . . it appearing to the Court that there is no genuine issue as to any material fact, . . . Defendant State of Hawaii's Motion for Summary Judgment . . . is granted on the following grounds:

Plaintiffs' [HPI's] claim in the amount of $75,468.04 as

alleged damages resulting from breach and/or rescission of contract to sell 9.642 acres of land to the State of Hawaii for $588,022.40 is precluded as a matter of law where Plaintiffs resold the subject property to S. Horita Investment and Development, Inc., for $1,235,000.00 approximately eight months after the State's alleged breach and/or rescission of contract.''

OPINION

I. DID THE STATE MAKE A LEGALLY BINDING PROMISE TO PAY $75,468.04 TO HPI?

The resolve of this question depends on the question of whether the Board acted within its statutorily granted authority.

HRS § 171-30[1] gives the Board exclusive responsibility for the acquisition of all real property needed by the State for public purposes.

The statute, however, does not expressly grant to the Board the power to settle legal disputes between itself and a

---

[1] § 171-30 *Acquisition of real property; general.* The board of land and natural resources shall have the exclusive responsibility of acquiring, including by way of dedications:

(1) All real property or any interest therein and the improvements thereon, if any, required by the State for public purposes, including real property together with improvements, if any, in excess of that needed for such public use in cases where small remnants would otherwise be left or where other justifiable cause necessitates the acquisition to protect and preserve the contemplated improvements, or public policy demands the acquisition in connection with such improvements.

(2) Encumbrances, in the form of leases, licenses, or otherwise on public lands, needed by any state department or agency for public purposes or for the disposition for houselots or for economic development.

The board shall upon the request of and with the funds from the state department or agency, effectuate all acquisitions as provided under this section.

A state department or agency may directly acquire such real property for its purposes whenever the acquisition by the department or agency is required to conform to mandatory requirements of the United States in the case where federal funds are furnished to the department or agency.

Property which may be acquired under this section includes all real property together with all structures and improvements thereon, franchises or appurtenances thereunto belonging, water, water rights, easements, and interests in land of every nature.

private party and commit the State to an obligation to pay a sum of money out of State funds. Nor does the statute expressly empower the Board to resolve, with finality, legal disputes between itself and a private party and bind the State to the resolve.

However, this court in *Yuen v. Hawaiian Homes Commission,* 37 Haw. 8 (1944) stated at page 11:

"... General powers to accomplish purposes entrusted to public offices [by statute] include all incidental powers fairly deducible from the end to be accomplished."

Thus, did the Board, in resolving its legal dispute with HPI, exercise an incidental power fairly deducible from the purposes the Board was entrusted to accomplish? We conclude the Board does not have such an incidental or implied power.

In our opinion, the exclusive responsibility of acquiring real property interests granted to the Board under HRS § 171-30 necessarily implies the authority to contract for the purchase of such interest. The implication is required lest the granting of the responsibility be substantially impaired. The same cannot be said for implying to the Board the power or authority to settle, with finality, legal disputes resulting from its breach of the land sale contract. This authority is not required by the Board to fulfill its duty to acquire real property interests for the State. The lack of authority to compromise, with finality, a legal dispute resulting from its breach of a land sale contract will not impair in any way the Board's ability to initially enter into a contract for the acquisition of land.

We believe that the Attorney General, under the authority of HRS § 26-7 (Supp. 1975),[2] has exclusive authority to control

---

[2] § 26-7 *Department of the attorney general.* The department of the attorney general shall be headed by a single executive to be known as the attorney general.

The department shall administer and render state legal services, including furnishing of written legal opinions to the governor, legislature, and such state departments and officers as the governor may direct; *represent the State in all civil*

and manage for the State all phases of civil litigation in which the State has an interest, unless authority to do so in specific matters has been expressly or impliedly granted to another department or agency. *See Kennington-Saenger Theatres, Inc. v. State,* 196 Miss. 841, 18 So.2d 483 (1944), and *State v. Ehrlick,* 65 W. Va. 700, 64 S.E. 935 (1909). The authority necessarily includes control of the settlement of imminent actions against the State. Under HRS § 26-7, the Attorney General has the further exclusive authority to approve as to the legality and form of all documents relating to the acquisition of any land or interest in land by the State.

We are of the opinion that implicit in the express grants of authority to the Attorney General, the Attorney General has the sole power to approve or to refuse to approve as to the legality and form of any compromise settlement effectuated by the Board in regards to the Board's breach of a contract to purchase land for the State.

The record is clear that no other department or agency has been expressly or impliedly granted the authority to approve or to disapprove as to the legality and form of the settlement in question.

Since the Board had neither express nor implied or incidental authority to settle, with finality, the dispute in this case, and since HPI was required to take notice of the extent of authority conferred by law on the Board, *Schull Construction Co. v. Board of Regents of Education,* 79 S.D. 487, 113 N.W.2d 663 (1962); *Lien v. Northwestern Engineering Co.,* 74 S.D. 476, 54 N.W.2d 472 (1952), we hold that the compromise agreement resolving the legal dispute between the Board and

*actions in which the State is a party; approve as to legality and form all documents relating to the acquisition of any land or interest in lands by the State; and, unless otherwise provided by law, prosecute cases involving violations of state laws and cases involving agreements, uniform laws, or other matters which are enforceable in the courts of the State. The attorney general shall be charged with such other duties and have such authority as heretofore provided by common law or statute. (Emphasis added.)*

. . . .

HPI, without the Attorney General's approval, was not binding upon the State.

We are of the further opinion that the Governor's allotment advice in regard to the compromise settlement and his letter to HPI relative to the settlement were both conditionally premised upon the Attorney General's approval. The Governor's conduct was in accordance with the provisions of HRS § 26-7 (Supp. 1975), *supra*.[3]

We, therefore, conclude that the State did not make a binding promise to pay $75,468.04 to HPI.

II. DID THE TRIAL COURT ERR IN HOLDING, AS A MATTER OF LAW, THAT WHERE HPI RESELLS THE SUBJECT LAND FOR $1,235,000.00 TO A THIRD PARTY EIGHT MONTHS AFTER THE CONTRACTUAL BREACH, AND THE PURCHASE PRICE IN THE SUBJECT BREACHED CONTRACT WAS $588,022.40, HPI IS PRECLUDED FROM RECOVERING ITS DAMAGE CLAIMS IN THE AMOUNT OF $75,468.04?

Under H.R.C.P. Rule 56(c) a summary judgment is sustained only if the record shows that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law; inferences to be drawn from the underlying facts alleged in the materials considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion. *Gum v. Nakamura*, 57 Haw. 39, 549 P.2d 471 (1976); *Technicolor, Inc. v. Traeger*, 57 Haw. 113, 551 P.2d 163 (1976).

In the instant case, there was no dispute on the facts relied upon by the trial court in holding, as a matter of law, that the HPI was precluded from recovering any damages. The facts relied upon by the court were: The amount of $75,468.04 claimed by HPI as damages; the contract price of the sales contract of $588,022.40; and the fact that HPI resold the land, approximately eight months after the date of breach of the sales contract, for $1,235,000.00.

---

[3] See also Article IV, Sections 5 and 6 of the Constitution of the State of Hawaii.

The law on the measure of damages, wherein the purchaser breaches an executory contract to purchase land, is that the vendor is entitled to recover against the defaulting vendee the difference between the contract price for the sale and the market value of the land on the date of breach. Thus, should the contract price of the land exceed the market value of the land on the date of breach, the vendor is entitled to the difference as damages. However, should the market value of the land on the date of breach be greater than the contract price, the vendor is entitled only to nominal damages. In addition, the vendor may be allowed the costs of making a resale as consequential damages. 5 CORBIN, CONTRACTS, § 1098A; 11 WILLISTON, CONTRACTS (3d ed.) § 1399; *see* *Uyemura v. Wick*, 57 Haw. 102, 551 P.2d 171 (1976).

We are of the opinion that the trial court erred in concluding, as a matter of law, that HPI was precluded from recovering any damages. Clearly, the trial court failed to apply the principle of law applicable herein on the determination of the measure of damages on the subject breach of the sales contract. The record fails to show the following: the relevancy[4] of the subsequent resale in connection with the determination of the measure of damages; the market value of the subject land at the time of the breach of the sales contract; and the relevancy of HPI's claim of $75,468.04 relative to the determination of the measure of damages.

On the record herein, the State is not entitled, as a matter of law, to a summary judgment in its favor. In *State v. Zimring*, 52 Haw. 472, 479 P.2d 202 (1970), we quoted at page 475, with approval, the following quotation from *Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co.*, 381 F.2d 245 (4th Cir. 1967):

"It is well settled that summary judgment should not be granted unless the entire record shows a right to judg-

---

[4] Upon proper evidence adduced, the relevancy of the subsequent resale may very well be established.

ment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. . . ."

We therefore remand this case for further proceedings in accordance with this opinion.

*Wendell K. Kimura* for plaintiffs-appellants.

*Eric Marn,* Deputy Attorney General *(Russell N. Fukumoto,* Deputy Attorney General, on the brief) for defendants-appellees.