Arvin L. BELLON, Maurine G. Bellon, B. Curtis Dastrup, Lanis B. Dastrup, and A. Labrum & Sons, Inc., Plaintiffs and Appellees,

v.

Marvel L. MALNAR, Defendant and Appellant.

No. 880226.

Supreme Court of Utah.

March 29, 1991.

Gordon A. Madsen, Robert C. Cummings, Salt Lake City, for defendant and appellant.

Robert F. Orton, Virginia Curtis Lee, Salt Lake City, for plaintiffs and appellees.

HOWE, Associate Chief Justice.

Defendant Marvel L. Malnar appeals from a judgment entered against her and in favor of plaintiffs, who are assignees of the buyer in a real estate contract with Malnar as seller. The action was brought by plaintiffs for restitution of the payments made by the buyer before he defaulted and Malnar forfeited his interest in the contract and the property.

## I. ·FACTS

On December 19, 1980, plaintiffs' assignor, Ferron Elder, entered into a real estate contract to purchase from Malnar 76 acres of land in Duchesne County, together with twelve shares of water stock, for $152,000. The contract provided for a down payment of $23,500 and for annual installment payments of $26,345.18 beginning in December 1981. A warranty deed to the full acreage was executed by Malnar and placed in escrow, with delivery conditioned upon complete performance of the contract. A quitclaim deed from Elder to Malnar was also placed in escrow with instructions that it be delivered to Malnar in the event of Elder's default. At the closing of the sale, Malnar executed a separate warranty deed to Elder for 6 acres of the land. This deed was then recorded, which Malnar now asserts was due to a mistake.

Elder made the down payment and the 1981 and 1982 annual installments. Early in 1984, when the 1983 payment was past due, Malnar served a notice of default upon Elder. The default was not cured, and subsequently, the quitclaim deed to the 76 acres from Elder to Malnar was delivered by the escrow agent to Malnar, who recorded it on February 3, 1984. Malnar asserts that at that time approximately one year's interest had accrued in the amount of $10,-247.80 and there were delinquent real estate taxes and water assessments.

Shortly after default, Elder assigned his title and interest in the property and contract to Eastern Utah Resources, which recorded a notice of interest against the entire 76 acres. One year after default, Elder conveyed the 6 acres to one Darrell

Didericksen, who thereafter encumbered it with a mortgage.

On October 18, 1982, while the contract was in force, Deseret Transmission commenced an action to condemn a right-of-way across the 76–acre tract to erect high-tension power lines. On March 7, 1985, Malnar, Elder, and his assignees entered into a stipulation in that action that (1) Malnar was the owner of all the property, (2) Malnar was to receive the entire condemnation proceeds, and (3) Elder and his assignees retained the right to assert a claim to equitable restitution of the monies forfeited under the installment contract of December 19, 1980.

The condemnation action was tried and resulted in a taking by Deseret Transmission of a right-of-way over 5.21 acres. Malnar received compensation for the taking totalling $41,075. She expended $6,000 for attorney fees in connection with the condemnation action, leaving her with $35,-075.

Eastern Utah Resources commenced the instant action for "equitable restitution" of the down payment and 1981 and 1982 annual installments which were forfeited to Malnar when Elder defaulted. *Perkins v. Spencer,* 121 Utah 468, 243 P.2d 446 (1952). Before trial, Eastern assigned its interests to plaintiffs. A bench trial was held at which the value of the 76 acres when the default occurred was in dispute. Plaintiffs presented testimony that the 76 acres, including the 5.21 acres over which the right-of-way was taken, were worth $180,000. Malnar testified that the tract was worth $101,000 at most, not including the 5.21–acre tract, but that in any event it was not worth more than $700 to $800 per acre. In addition, Malnar's appraiser testified that the value of the 70 acres (excluding the 6 acres conveyed at closing) in 1985, at the time the stipulation between the parties was made, was $1,400 per acre, totalling $98,000. Testimony was also adduced that by the date of trial the value of the tract had decreased substantially due to economic decline in the Duchesne region.

The trial court found that at the time Malner recorded the quitclaim deed to the 76 acres, their value was $180,000. The court further found that the 6 acres conveyed at closing were mistakenly included in the description in the quitclaim deed and that Malnar had no interest in that tract. The court valued the 6–acre tract at $30,-000 and subtracted that amount from the $180,000 total value to arrive at $150,000 value for the 70 acres. To that amount it added the $35,075 net recovery in the condemnation action, for a total of $185,075.

The trial court computed Malnar's damages by first subtracting the total amount paid in principal, $50,080.65, from $152,000, the contract price, leaving $101,919.35. The court then added $10,247.80 for the accrued interest due when the default occurred and $1,774.52 for delinquent real property taxes and water assessments, for a balance owing to Malnar under the contract of $113,941.67.

The court subtracted that balance, $113,-941.67, from the total amount she had received, $185,075, and awarded judgment against her and in favor of plaintiffs in the amount of $71,133.33. Malnar appeals.

## II. STANDARD OF REVIEW

We first enunciate the standard of review for legal conclusions and factual findings, as both are assigned as error in the instant case. "A trial court's legal conclusions are accorded no particular deference; we review them for correctness." *Grayson Roper Ltd. v. Finlinson,* 782 P.2d 467, 470 (Utah 1989). However, a trial court's findings of fact, whether based on oral or documentary evidence, will not be set aside on appeal unless clearly erroneous. *Id.;* Utah R.Civ.P. 52(a). This "clearly erroneous" standard is applicable in equity cases such as the instant case. *Bountiful v. Riley,* 784 P.2d 1174, 1175 (Utah 1989); *Ashton v. Ashton,* 733 P.2d 147, 150 n. 1 (Utah 1987).

## III. THE DISPUTED 6–ACRE TRACT

■ Malnar assigns as error the court's finding that she intended to convey the 6–acre tract of land to Elder at the time of closing. This finding is reviewed under the

clearly erroneous standard. On the day of closing, December 19, 1980, four separate documents were signed which bear upon the disposition of the 6 acres: (1) an earnest money receipt and agreement dated December 18, 1980, and signed either that day or the next day, providing for a sale price of $152,000 for 76 acres; (2) the real estate contract dated and signed on December 19; (3) a warranty deed conveying 6 of the 76 acres to Elder; (4) a quitclaim deed executed by Elder conveying 76 acres back to Malnar in the event of Elder's default.

The real estate contract provides in paragraph 17:

Upon payment of the sum of $3,000 *in addition to the annual payments herein required,* Seller agrees to release 1 acre lots. The releases will be upon approval of Bow Valley Resources of Denver, Colorado. Buyer shall receive credit for all sums paid for lot releases on the last payments to become due. It is not intended that said *$3,000 per acre* should be extra consideration, but merely early payment for early release of the lot.

(Emphasis added.) Malnar argues that this language in the contract indicates her intention to release the 6-acre parcel only upon payment of $3,000 per acre "over and above the specified annual payments."

Plaintiffs counter with language in the "earnest money receipt and offer to purchase," which provides:

Seller to carry balance over a five year period with 5 annual payments, first annual payment 1 year from closing. Interest on the balance will be 10%. Seller to release 6 acres at closing and will release 10 acre parcels upon payment of $3,000.00 per acre all releases must be approved by Bow Valley of Denver Colorado. Released parcel will start on the northern boundary line and move in a southerly direction.

Plaintiffs argue that the 6-acre parcel was deeded "free and clear" and that the property earmarked for early release upon payment of $3,000 per acre was one or more 10-acre parcels separate from the 6 acres.

The trial court heard testimony on the intent of the parties when they signed the conflicting documents. Elder testified that he was being given title to 6 acres for paying $2,000 per acre for the 76 acres instead of $1,500 per acre, the original asking price. He paid for the 6 acres "at the time of the agreement" and testified that he "was given clear, free title." Malnar testified that she thought the deed to the 6 acres was going into escrow and that she would not have signed the deed had she known the 6 acres were to be immediately conveyed to Elder. Another witness present at the closing testified that there was a lot of confusion at that time. The prices on the real estate contract had to be amended and the warranty deed signed. Due to the confusion, the parties did not make the change "on the Quit-Claim Deed nor the Warranty Deed to match what actually happened that day."

The trial court found:

It was the intent of Elder and Malnar that [Elder] receive title to the said six (6) acre parcel at closing on December 19, 1980, as is more particularly evidenced by the following: the delivery to Elder on December 19, 1980, of the warranty deed covering the six (6) acres and the recording by Elder of said deed; the earnest money agreement dated December 18, 1980, which provided that the said six (6) acres tract be conveyed to Elder; and the treatment by Elder after closing on December 19, 1980, of the said six (6) acres as his sole property by making conveyances and assignments with respect thereto.

In view of the intended immediate conveyance of the 6 acres, the court further found that the failure to exclude the 6 acres from the legal description in the quitclaim deed to Malnar was a mistake by Elder, Malnar, and the drafter of the instruments.

While Malnar disputes the finding that she intended to immediately convey the 6 acres, the intent of the parties is a question of fact. We will not disturb the trial court's finding unless it is clearly erroneous. *See* Utah R.Civ.P. 52(a); *Sacramento Baseball Club, Inc. v. Great Northern Baseball Co.,* 748 P.2d 1058, 1059–60 (Utah 1987). The findings are not "against the

great weight of evidence," *Bountiful v. Riley*, 784 P.2d at 1175, and are not clearly erroneous.

 We do, however, agree with Malnar that it was error for the court to quiet title to the 6 acres against her. Neither plaintiffs nor Malnar sought to quiet title. Indeed, plaintiffs never owned the tract and made no claim to it. Malnar could not have sought to quiet title in this action since neither Elder, Didericksen, nor his mortgagee was a party. It was therefore error for the court to decree that Malnar had no right, title, or interest in the tract. That part of the judgment is reversed.

## IV. VALUATION OF THE PROPERTY

 Malnar contends that the trial court erred in finding the value of the property to be $180,000 in February 1984 when the default occurred. She first asserts that the date of valuation should be March 7, 1985, because Elder's assignees refused to acquiesce in the forfeiture and claimed ownership in the property until that date. The trial court properly concluded as a matter of law that fair market value should be determined as of the time of breach, which was February 3, 1984. This is the general rule in real estate contracts. *See Webster v. DiTrapano*, 114 A.D.2d 698, 494 N.Y. S.2d 550 (1985); *Quigley v. Jones*, 174 Ga. App. 787, 332 S.E.2d 7, *aff'd*, 255 Ga. 33, 334 S.E.2d 664 (1985); *Lake Shore Investors v. Rite Aid Corp.*, 55 Md.App. 171, 461 A.2d 725, *aff'd*, 298 Md. 611, 471 A.2d 735 (1983); *American Mechanical Corp. v. Union Mach. Co. of Lynn, Inc.*, 21 Mass. App. 97, 485 N.E.2d 680 (1985). As the trial judge stated from the bench, Malnar's assertion appears to be a claim for interference with marketable title, which would have to be affirmatively pleaded. No such pleading was made, and the trial judge correctly confined his valuation to the time of default when Malnar exercised her option to retake the property. In addition, Malnar testified that between the time of retaking the property and obtaining a stipulation removing the cloud on the title, she made no attempt to resell the property or to list it with a real estate broker. Thus

Malnar was not prevented from selling the property by any action of Elder or his assignees.

 Malnar further asserts that the trial court's factual finding valuing the property at $180,000 is error. An expert witness for plaintiffs testified that the land was worth $180,000. Malnar's appraiser affixed a lesser value to the land in 1985 but was unable to give an opinion on the value of the property in 1984. The valuation finding is therefore not clearly erroneous.

## V. CONDEMNATION PROCEEDS

 Malnar next contends that the trial court erred in charging her with the $35,-075 net condemnation award as if it had been paid by the buyer as principal on the contract. When the condemnation action was filed, Elder held equitable title to the land: That title was forfeited before the award of compensation was made. After forfeiture and before the award, Elder and his assignees stipulated that any proceeds should go to Malnar. Malnar argues that where forfeiture occurs before a condemnation award is made, the vendor takes the land back burdened by the condemnation and is therefore entitled to the proceeds since they are in payment of damages to the lands he repossesses. We agree.

The trial judge found that "on October 18, 1982, an order of immediate occupancy was entered and a required cash deposit paid into the court by [condemnor] for the landowner." Utah Code Ann. § 78–34–9 provides in pertinent part:

> The rights of the just compensation for the land so taken or damaged *shall vest in the parties entitled thereto* ... and the said judgment shall include ... interest ... *from the date* of taking actual possession thereof by the plaintiff or order of occupancy, whichever is earlier....

(Emphasis added.)

The court's authority in protecting the vested interests of both parties was explained in *Jelco, Inc. v. Third Judicial District Court*, 29 Utah 2d 472, 475–76, 511 P.2d 739, 742 (1973). The condemnor

deposits money in court. Upon proper application, the court orders it paid to the parties in interest. However, the vendee is normally entitled to the condemnation award as he is the equitable owner. The court can therefore make orders with respect to encumbrances and liens to safeguard the security interest of the vendor. Justice, equity, and practicality are considered by the court in protecting the interests of the parties.

In the instant case, however, before any disbursements were ordered from the funds deposited by the condemnor, default occurred. Both equitable and legal title vested in Malnar, with the concomitant right to receive the eminent domain proceeds. It was a practical solution for the parties to stipulate that the proceeds would go to Malnar. The proceeds stood in lieu of the right-of-way taken. The defaulting vendee is thus credited with returning the condemned land undamaged. It follows that the proceeds are not also payments toward the contract price; to so regard them would be double-counting.

## VI. CALCULATION OF DAMAGES

■ Malnar contends that the trial court erred in departing from the method of calculating damages formulated in *Perkins v. Spencer*, 121 Utah 468, 478–79, 243 P.2d 446, 451–52 (1952) (this method is set out below). We have previously held that the factors used in the *Perkins* test need not be rigidly adhered to:

> Although these are reasonable factors to determine damages, they were not meant to be a rigid formula to be applied mechanically in every case. In determining equitable damages, the trial court may use whatever factors it finds most appropriate to achieve justice.

*Johnson v. Carman*, 572 P.2d 371, 374 (Utah 1977). However, in reviewing the method used by the trial judge to arrive at a judgment for plaintiffs of $71,183.14, we are left with "a definite and firm conviction that a mistake has been made." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

The trial judge in effect returned to the defaulting vendee the appreciated value of the property. This was error. We stated in *Butler v. Wilkinson*, 740 P.2d 1244, 1256 (Utah 1987), that a vendee "is entitled to the appreciated value of the property over the contract purchase price as long as his or her interest *has not been forfeited.*" (Emphasis added.) However, when the vendee defaults on property which has appreciated in value, he is not entitled to the appreciated value. The appreciated value, however, negates the vendor's entitlement to damages for "loss of advantageous bargain," the first factor in the *Perkins* test. *See Harris v. Shell Dev. Corp. Nev., Inc.*, 95 Nev. 348, 594 P.2d 731, 734 (1979) ("Where ... the market value of the land at the time of breach is higher than the purchase price, the vendor is entitled to only nominal damages plus proved consequential damages."); *Zareas v. Smith*, 404 A.2d 599, 600–01 (N.H.1979) (if the value at the time of breach is greater than the contract price, the vendor can recover only nominal damages and not loss of bargain); *accord Spurgeon v. Drumheller*, 174 Cal. App.3d 659, 665, 220 Cal.Rptr. 195, 198 (Ct.App.1985); *Island–Gentry Joint Venture v. State*, 57 Haw. 259, 554 P.2d 761, 767 (1976); *see also Soffe v. Ridd*, 659 P.2d 1082, 1085 (Utah 1983) (defaulting purchaser testified that when he vacated the property, it "was worth a substantial amount more than the contract price"; therefore, vendor was not entitled to loss of bargain damages).

We recalculate the damages using the *Perkins* formula, which takes into consideration the following elements:

(1) Loss of an advantageous bargain;

(2) Any damage to or depreciation of the property;

(3) Any decline in value due to change in market value of the property not allowed in items Nos. 1 and 2;

(4) For the fair rental value during the period of occupancy.

*Perkins v. Spencer*, 121 Utah at 478–79, 243 P.2d at 451–52; *Cole v. Parker*, 5 Utah 2d 263, 267, 300 P.2d 623, 627 (1956).

■ *Loss of advantageous bargain:* The contract price of the property was

$152,000. The value of the property, including the disputed 6 acres, at forfeiture was $180,000. Malnar is not entitled to loss of bargain damages when the property has appreciated in value. *Soffe v. Ridd,* 659 P.2d at 1085.

■ *Damage to or depreciation of the property:* The $6,000 attorney fees expended in the eminent domain action are not damages. Malnar would have been required to pay them in the absence of the contract with Elder. Taxes and water assessments are owed in the amount of $1,774.52.

■ The nonreturn of the 6–acre tract constitutes an item of damage. Inasmuch as the trial court found that Malnar intended to convey that tract at closing and we have affirmed that finding, her damages are $12,000, representing six times the contract price of $2,000 per acre, not the value of the tract when the buyer defaulted ($30,000).

*Decline in value due to change in market value not allowed above:* None.

■ *Fair rental value during the period of occupancy:* The trial court properly allowed Malnar interest on the contract as an alternative to fair rental value. *See Fullmer v. Blood,* 546 P.2d 606 (Utah 1976). The total amount paid was $26,109.71. Another $10,247.80 accrued to the date of forfeiture.

In summary, damages suffered by Malnar are as follows:

| | |
|---|---|
| $ 1,774.52 | delinquent taxes and water assessments |
| 12,000.00 | value of 6 acres conveyed |
| 26,109.71 | interest paid on contract |
| 10,247.80 | accrued interest owing |

$50,132.03

Malnar received the down payment on the contract of $23,500 and the 1981 and 1982 annual installments of $26,345.18 each, making a total of $76,190.36.

■ The contract provides that thirty days after the default of the buyer and his failure to remedy the same within five days after written notice, the seller may "be released from all obligations in law and in equity to convey said property, and all payments which have been made thereto-

fore on this contract by the Buyer, shall be forfeited to the Seller as liquidated damages for the nonperformance of the contract...." If this forfeiture clause is enforced, Malnar keeps all payments made, including the excess of payment made over damages, which is $26,058.33, approximately 17 percent of the contract price of $152,-000. We will enforce a forfeiture clause unless we find that the forfeiture would be so "grossly excessive in relation to any realistic view of loss that might have been contemplated by the parties that it would so shock the conscience that a court of equity would refuse such forfeiture." *Jensen v. Nielsen,* 26 Utah 2d 96, 97, 485 P.2d 673, 674 (1971); *accord Strand v. Mayne,* 14 Utah 2d 355, 384 P.2d 396 (1963); *Jacobson v. Swan,* 3 Utah 2d 59, 278 P.2d 294 (1954). Examination of our case law indicates that this court will enforce the forfeiture clause when the amount of forfeiture does not greatly exceed, or is less than, the amount of damages. In *Cole v. Parker,* 5 Utah 2d at 264, 300 P.2d at 624, the vendee had paid $11,600 toward a contract price of $40,000. However, the difference between the purchase price and the value of the property at the time of default exceeded $11,600, and this closed further inquiry. A similar result was reached in *Weyher v. Peterson,* 16 Utah 2d 278, 399 P.2d 438 (1965). In *Carlson v. Hamilton,* 8 Utah 2d 272, 332 P.2d 989 (1958), the vendee paid $6,680 principal and interest toward a $22,-000 contract price. The excess of payment over damages, which included rental value, was $2,119.94. The amount "was but 9½ percent of the purchase price, an amount that would exceed but little the real estate commission that would have to be paid on resale of the property...." 8 Utah 2d at 274, 332 P.2d at 990. In *Strand v. Mayne,* 14 Utah 2d at 356–57, 384 P.2d at 396, the vendees forfeited almost half the contract price because payments credited and rental value exceeded what they had paid. Similarly, the vendee in *Fullmer v. Blood,* 546 P.2d at 609–10, forfeited $12,150 paid to the vendor, but this amount was only $1,150 more than the interest payable on the contract during the period of occupancy.

In these cases, and in the cases cited in *Perkins v. Spencer,*

[i]t will be observed that in all cases where the stipulation for liquidated damages was enforced it bore some reasonable relation to the actual damages which could reasonably be anticipated at the time the contract was made and was not a forfeiture which would allow an unconscionable and exhorbitant recovery.

*Perkins v. Spencer,* 121 Utah at 474, 243 P.2d at 449. In the instant case, a recovery of over $26,000 in excess of actual damages shows that liquidated damages bear no reasonable relationship to actual damages. A forfeiture here would allow an unconscionable recovery. We therefore award plaintiffs the $26,058.33 that was paid in excess of Malnar's damages. *See Perkins,* 121 Utah at 478–79, 243 P.2d at 451–52.

■ Plaintiffs cross-appeal from the trial court's denial of prejudgment interest to them. A survey of our cases where prejudgment interest was awarded indicates that interest has been allowed in actions for damage to personal property, *Fell v. Union Pac. Ry.,* 32 Utah 101, 88 P. 1003 (1907); *Uinta Pipeline Corp. v. White Superior Co.,* 546 P.2d 885 (Utah 1976); in actions brought on a written contract, *Jack B. Parson Constr. Co. v. State,* 552 P.2d 107 (Utah 1976); *Bjork v. April Indus., Inc.,* 560 P.2d 315 (Utah 1977); *Jorgensen v. John Clay and Co.,* 660 P.2d 229 (Utah 1983); *Anderson v. State Farm Cas. & Fire Co.,* 583 P.2d 101 (Utah 1978); and in an action to recover a liquidated overpayment of water subscription charges, *Staker v. Huntington Cleveland Irr. Co.,* 664 P.2d 1188 (Utah 1983). In many of these cases, we stressed that the loss had been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages. No case has been cited to us where we have allowed prejudgment interest in an action such as the instant case, which is for equitable relief. "A suit of this nature involving the invocation of a forfeiture and/or the enforcement of a purchase contract invokes consideration of the principles of equity which address themselves to the

conscience and discretion of the trial court." *Fullmer v. Blood,* 546 P.2d at 610. In view of the highly equitable nature of this action where the court has discretion in determining the amount, if any, to be returned to the defaulting vendee, we find no error in the denial of prejudgment interest.

Remanded for the purpose of amending the judgment in accordance with this opinion. Costs awarded to defendant.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.