E. F. HUTTON & COMPANY, INC., Plaintiff,

v.

Brian C. SCHANK, Defendant.

No. C 76–48.

United States District Court, D. Utah, C. D.

Nov. 22, 1976.

508

W. Jerry Ungricht, Salt Lake City, Utah, for plaintiff.

Steven H. Gunn, Salt Lake City, Utah, for defendant.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Chief Judge.

The issues herein discussed and decided are before the court by way of plaintiff's motion for summary judgment as to all issues raised in the complaint and counter-claim in the captioned action. The motion for summary judgment with a supporting memorandum of points and authorities was filed with the court on August 20, 1976. Thereafter, defendant filed a memorandum opposing the motion and counsel for plaintiff availed himself of the opportunity to respond to that opposition by way of an additional memorandum. The court has considered carefully the memoranda, affidavits and depositions submitted by both parties with respect to this motion. Being fully advised thereon, the court enters this order in accordance with the following analysis.

## FACTUAL CIRCUMSTANCES

Central to this case is a commodities futures trading account which was established in the name of the defendant with the plaintiff. Plaintiff, E. F. Hutton and Company, Inc., is a Delaware corporation with its principal place of business in New York City. Plaintiff is a nationally known securities and commodities brokerage firm qualified to do, and doing, business in the State of Utah. Plaintiff handles accounts for customers seeking to invest funds in securities as well as in commodities futures contracts. Underlying the complaint and petition brought by the plaintiff herein for an order granting specific performance of the arbitration clause of a customer's agreement between plaintiff and defendant is a debt allegedly owing plaintiff on defendant's commodities account. The debt was the result of activity in that account which resulted in substantial losses. Plaintiff originally attempted to recover the obligation from defendant by initiating a collection action in state court. However, when the defendant in answering the state court complaint raised a counterclaim alleging violation of the state securities laws, plaintiff made a demand for arbitration of the issues pursuant to the arbitration clause of the standard customer's agreement allegedly signed by the defendant. When defendant refused to submit the dispute to arbitration, plaintiff filed this action.

## ANALYSIS

Defendant opposes plaintiff's motion for summary judgment by 1) assailing the validity of the customer's agreement and arbitration clause included therein, and 2) by claiming that his commodities account is, or, depending upon the resolution of factual issues material thereto, might be a "security," and therefore not subject to arbitration under the Supreme Court holding in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 99 L.Ed.2d 168 (1953).

1. Defendant's attack upon the validity of the customer's agreement and the included arbitration clause.

To the defendant's claim that the customer's agreement and the included ar-

bitration provision are invalid based upon the facts as presented in a light most favorable to the defendant, plaintiff first argues that the question is controlled by the holding of the U.S. Supreme Court in *Prima Paint Corp. v. Flood and Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). This court finds that the Supreme Court decision there is applicable to the circumstances of this case, but in a way contrary to the proposition for which plaintiff advances it. Plaintiff argues that because defendant has raised questions as to the validity of the entire contract (customer's agreement), this court is barred from deciding the question because the Court in *Prima* held that such questions are the exclusive province of the arbitrator under the policy and practice of the Federal Arbitration Act, 9 U.S.C. §§ 1 et. seq. That conclusion does not adequately and completely represent the full import of the Supreme Court's holding in *Prima.* The very language from that opinion cited to this court by plaintiff raises clearly another important aspect of that decision. This second aspect, especially when considered in the factual context of the case, is a strikingly clear mandate. The Supreme Court said, with reference to § 4 of the Federal Arbitration Act:

> . . . the federal court is instructed to order arbitration to proceed once it is *satisfied* that "*the making of the agreement for arbitration* or failure to comply [with the arbitration agreement] *is not in issue.*" Accordingly, if the claim is *fraud in the inducement of the arbitration clause itself*—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language *does not permit* the federal court to consider claims of fraud in the inducement of the contract *generally.* (emphasis added) *Id.* at 403, 87 S.Ct. at 1806.

In *Prima,* Prima Paint had initiated an action for rescission of a consulting agreement between it and Flood & Conklin. The suit was brought in federal district court and the basis for the action was fraud in

the inducement of the entire contract. Prima Paint alleged that Flood & Conklin had falsely represented its solvency in inducing the signing of the agreement. Flood & Conklin petitioned the district court for a stay pursuant to § 3 of the Federal Arbitration Act pending a resolution of the dispute by arbitration pursuant to the arbitration clause of the consulting agreement. Prima Paint, in arguing against the entry of the stay, did not attack the validity of the arbitration clause itself. Essentially, the question of law presented by the case was simply one concerning the separability of an arbitration clause from the remainder of an agreement being attacked on a general claim of fraudulent inducement. The holding of the Supreme Court was, therefore, that in the absence of some claim or circumstances which specifically raised the question of the validity of the arbitration provision, separate and apart from the rest of the agreement, the clause was separable. Admittedly, in this case, the defendant has said that he attacks the validity of the entire customer's agreement. However, an examination of the factual and legal bases of that attack leads this court to conclude that, not only is the making of the customer's agreement at issue, but so is the making of the arbitration agreement itself. A primary factual allegation leading to that conclusion is the claim of defendant that he had no knowledge that there was an arbitration provision in the customer's agreement. In light of this conclusion, this court now proceeds to the consideration and analysis of defendant's attack on the validity of the arbitration agreement in opposition to the plaintiff's motion for summary judgment.

First, the defendant's arguments concerning the validity of the arbitration agreement are an admixture of claims of fraudulent inducement, unconscionability and undue influence; however, clear, correct analysis requires that this court consider each of these claims separately.

▪ Both in an earlier motion to dismiss, and in the present opposition to plaintiff's motion for summary judgment, the defendant has asserted rather flatly that the contract is void because it was unconscionable. This court holds that as a matter of law the facts of this case, when taken in a light most favorable to the defendant, do not give rise to a claim of unconscionability. The court believes that the defendant has misconceived the nature of a claim of unconscionability. This misconception is evidenced by the following statement made concerning the alleged failure of Mr. Lybbert to fully explain the terms of the customer's agreement concerning margin requirements and arbitration:

> The scope and importance of Clause 4, dealing with margin requirements and discretionary selling by the broker, and of Clause 7, dealing with arbitration, are of such magnitude that to distract Defendant's attention from them by a totally inadequate presentation of the contract's meaning would render any contract including them unconscionable and thereby invalid.

The court believes that the elements of failure to disclose and distracting described by the defendant are more appropriately raised in claims of undue influence and fraudulent inducement. Neither the plaintiff nor defendant has supplied the court with further argument on the elements of unconscionability. The court notes the law of the State of Utah is stated in *Carlson v. Hamilton,* 8 Utah 2d 272, 332 P.2d 989 (1958). The Utah Supreme Court there said:

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract *so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice,* that equity will deny the use of its good offices in the enforcement of such unconscionability. Id. at 990–91.

The court cannot conclude that the arbitration clause of the customer's agreement is a term which is so unconscionable as to arouse a "profound sense of injustice" in any "decent, fairminded person."

■ The court finds that there is an initial issue of fact regarding the authenticity of the signature of the defendant which appears upon the customer's agreement. The evidence before the court on this issue includes deposition testimony and the signed document. Plaintiff has made a *prima facie* showing that the signature is indeed the signature of the defendant. Defendant, on the other hand, has not submitted any evidence to the contrary. Indeed, in his memorandum of points and authorities submitted in opposition to plaintiff's motion for summary judgment, counsel for defendant seems to concede this issue. He there states:

> In his deposition, Defendant states seven times that he does not recall signing the Customer Agreement. Defendant states only that the signature appears to be his. Although there is a place for the date, there is no explanation as to why the document is undated. All the other documents which were filled in at the same meeting to establish the commodities account were properly dated. This lack of explanation coupled with Defendant's lack of recollection as to signing the document sharply calls into question the circumstances under which the *document was executed.* (emphasis added)

In light of the lack of evidence rebutting that presented by the plaintiff as to the authenticity of defendant's signature, and the tacit admission of that authenticity by the counsel for defendant, the court concludes that although such authenticity is a material fact, the fact is established.

In its motion for summary judgment, plaintiff argues that the defendant is precluded from attacking the validity of the customer's agreement which he signed. Plaintiff cites *Garff Realty Company v. Better Building, Inc.,* 120 Utah 344, 234 P.2d 842, 844 (1951) in support of that proposition. Plaintiff quotes from that case the following:

> Ignorance of the contents of an instrument does not ordinarily affect the liability of one who signs it.

Defendant counters that plaintiff has failed to give the court the complete picture of the principle established in *Garff.* Defendant cites from that case the following additional language:

> The courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not misled as to its contents and who sustains no confidential relationship to the other party cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it.

Defendant points out that the import of this additional language of the court in *Garff* are the exceptions, set out therein, to the general rule that "[A] person who, having the capacity and an opportunity to read a contract . . . cannot avoid the contract on the ground of mistake if he signs it without reading it . . . ." The exceptions are for a person who is "misled" or who sustains a "confidential relationship to the other party," or who is in other "special circumstances excusing his failure to read." This court finds that it is unnecessary to go so far as to consider what is meant by those exceptions. That is, there is no need to decide whether or not the friendship of defendant and Mr. Lybbert is the kind of "confidential relationship" contemplated by the court in the above citation or whether "misled" is to be construed broadly so as to include more than fraud.

■ The reason that the court need not consider the exceptions to the principle stated in *Garff* is that that principle is simply an elaboration or corollary of the doctrine of unilateral mistake. Aside from the general principle that such unilateral mistake is not grounds for the avoidance of a contract, there is the obvious requirement that there be some mistake as to the contents of the contract. Even if the defendant relied upon his friend, Mr. Lybbert, for the con-

tents of the contract, the evidence does not show that there was any "mistake" as to its contents. Mr. Lybbert testified that he told defendant that the customer's agreement was "to *protect* E. F. Hutton in the event that, you know, he (defendant) shouldn't come up with the money or something shouldn't [sic] go down sharply." (parentheses and emphasis added). The only evidence submitted by defendant to the contrary is deposition testimony that he does not remember the circumstances surrounding the execution of the customer's agreement. In the face of positive evidence establishing a fact, this court does not equate lack of memory with a denial of the fact. If, as defendant seems to contend, he signed the customer's agreement relying upon the representations of Mr. Lybbert as to its contents, he cannot now be heard to complain that he was mistaken as to the contents of the agreement when the provision now sought to be imposed upon him is, just as Mr. Lybbert stated, protective of plaintiff. For the same reason, the arguments presented by counsel for the defendant that the agreement was induced by fraud are not well taken. There was not "misrepresentation", intentional or otherwise, concerning the contents of the contract.

II. Defendant's claim that the commodities account is a security and that the question of arbitration is controlled by *Wilko v. Swan.*

In *Wilko v. Swan, supra,* the U.S. Supreme Court considered the question of whether or not an arbitration agreement would, under the Federal Arbitration Act, serve to stay a Federal District Court action for violation of § 12(2) of the Securities Act of 1933. Section 14 of the 1933 Act, 15 U.S.C. § 77n, provides:

> Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules of the Commission shall be void.

The Supreme Court in *Wilko v. Swan* held that the arbitration agreement between the parties in that case was a provision binding one of the parties to waive compliance with the provision of the Securities Act giving access to the courts for adjudication of a § 12(2) claim. Defendant, in the case here under consideration, claims that the commodities account of defendant with plaintiff was a security and governed by the doctrine of *Wilko v. Swan.*

■ This court has previously held that a commodities futures contract is not a "security" within the meaning of the securities laws of the United States. *See, Paine, Webber, Jackson and Curtis v. Hansen,* NC 26–73 (D.C.Utah, filed July 6, 1976). However, this court has not, to this point, had occasion to consider the question of whether or not a commodities futures account with a brokerage firm is a security within the meaning of that term in the securities laws. It appears from the citations of authority presented by both the plaintiff and defendant that there is no final word on this issue. The decisions are split in this regard. This court concludes, however, that the authority cited by the defendant supporting a finding of a security upon the facts and circumstances of this case are inapplicable for failure to take into account the rather comprehensive amendments which have recently been made to the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq. (1936). Those amendments result in significant expansion of the scope of commodities futures regulation and the establishment of an independent federal agency, the Commodities Futures Trading Commission [CFTC]. They were enacted as effective on April 21, 1975, as the Commodities Futures Trading Commission Act of 1974, P.L. 93–463, 88 Stat. 1389.

It is clear from the reasoning of courts finding that a discretionary commodities account is an investment contract or security within the meaning of the federal securities laws, that such construction is primarily motivated by a desire to afford to public investors in the commodities futures market the same kind of protection afforded to investors in the stock market. For example, the federal district court in *Marshall v. Lamson Bros. & Co.,* 368 F.Supp. 486 (S.D.

Iowa, 1974), in its decision holding that a discretionary commodities account is a "security" said, quoting from *SEC v. W. J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946):

> [T]he concept of security "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Marshall, supra* at 488.

The court in *Marshall* further stated with reference to a construction of the *Howey* "common enterprise" requirement that would bring the discretionary account within the definition of "security":

> Because the former conclusion is far more consonant than the latter with the principle that the '33 and '34 Acts are remedial legislative acts which should be construed broadly to effectuate their purpose and with what can only be described as the continually expanding reach of federal regulation of securities transactions, this Court is inclined to read the *Howey* definition of investment contract more broadly . . . . *Marshall, supra* at 489.

In light of the rather restricted nature of the regulation and protection provided investors under the Commodities Exchange Act at the time of the decision in *Marshall,* there is little wonder that the court, faced with the significant expansion of public participation in the commodities futures market, felt compelled to construe the federal securities laws and the *Howey* decision as it did.

This court finds it unnecessary to engage in an exercise of subtle distinction and construction. The Commodities Futures Trading Commission Act of 1974 [the CFTC] has, without question, filled the protective regulatory gap which was the motivation for expanding the coverage of the securities laws in cases like *Marshall.* Although it has been held that the protections against fraudulent and misleading conduct afforded by the CFTC Act are not as comprehensive as the protections which are available in SEC Rule 10b–5, 17 C.F.R. § 240.10b–5,

[*see, McCurnin v. Kohlmeyer & Co.,* 347 F.Supp. 573 (E.D.La.1972), *aff'd on other grounds,* 477 F.2d 113 (5th Cir. 1973)], it is important to note that the decision of the U.S. Supreme Court in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), requiring that there be scienter as a prerequisite to a 10b–5 suit, essentially brings the fraudulent conduct protections of the securities acts into line with the "willful" fraud provisions of the CFTC Act. *Cf.,* 7 U.S.C. § 6b (1974).

Given the comparability of the protections against fraudulent conduct given to investors, there is little reason to attempt to construe *Howey* so as to include discretionary commodities accounts within the bailiwick of the securities acts and the SEC. Indeed, because of the exclusive jurisdiction which Congress granted the CFTC over "accounts, agreements, and transactions involving contracts of sale of a commodity for future delivery," it would fly in the face of express Congressional intent to do so. *See,* 7 U.S.C. § 2 (1974). For a complete and careful discussion of the "exclusive jurisdiction" of the CFTC, *see,* 29 Vand.L.Rev. 1 (1976).

Notwithstanding the above conclusion, defendant might be heard to argue that the fraudulent conduct protections are not exactly comparable since under the securities laws an investor has a guaranteed right to court access notwithstanding the existence of an arbitration agreement between the parties. The CFTC Act with its own limited arbitration provision under the duties of "contract markets", 7 U.S.C. § 7a(11) (1974), and a policy of permitting but not guaranteeing court access, has no provision comparable to 15 U.S.C. § 77*l*(2) which was the basis for the denial of arbitration in *Wilko v. Swan, supra* 346 U.S. at 434–35, 74 S.Ct. at 186–87. The CFTC Act protections with regard to fraud and misrepresentation are different in this regard. However, this court concludes that it would be anomalous to hold that a commodities account was a security for purposes of permitting an investor to avoid an arbitration provision, while holding for all other purposes that

**514**

Congress did not intend that a commodities account be a security subject to the provisions of the securities acts and the regulation of the SEC.

## CONCLUSION

This court finds, first, that application of the properly controlling principles of law to defendant's attacks upon the validity of the customer's agreement and the included arbitration provision yields no outstanding material issues of fact as to their validity. The court next finds that the undisputed facts support the conclusion that the arbitration agreement is valid. The court finds, finally, that the commodities account, whether or not discretionary, is not a "security" within the contemplation of the federal securities laws and, therefore, that the arbitration agreement is not relieved of its binding nature by the decision of the Supreme Court in *Wilko v. Swan.* Accordingly,

IT IS HEREBY ADJUDGED, ORDERED AND DECREED that plaintiff's motion for summary judgment on all issues raised in the complaint and counterclaim herein is granted and defendant is ordered to submit the dispute, herein, to arbitration in accordance with the provisions of the arbitration provision of the customer's agreement.

IT IS FURTHER ORDERED that the purpose of plaintiff's petition for a stay of the state court proceedings in this dispute is fulfilled by enjoining the parties from further proceedings in the District Court of Salt Lake County, Utah in the case entitled *E. F. Hutton & Company, Inc. v. Brian C. Schank,* Civil No. 231531. This is entered pursuant to the power of this court under 28 U.S.C. § 2283 to thus effectuate and protect the judgment of specific performance granted herein.