**Mark O. WALSH, Plaintiff,**

v.

**INTERNATIONAL PRECIOUS METALS CORPORATION, a Foreign Corporation, and Dennis Golumbowski, K. Jerry Phillips and Sam Goldman, Defendants.**

Civ. No. C 80–0270A.

United States District Court,
D. Utah, C. D.

March 26, 1981.

John Walsh, Salt Lake City, Utah, for plaintiff.

Jerrald D. Conder and Scott R. Wangsgard, Salt Lake City, Utah, for defendants.

ALDON J. ANDERSON, Chief Judge.

On November 3, 1980, defendants filed their Motion to Dismiss. Supporting and opposing memoranda were filed subsequently. The matter is deemed submitted since oral argument has not been requested pursuant to rule 5(g) of the local rules of practice. Having reviewed carefully the relevant legal authorities, the memoranda of counsel and other pertinent matters in the file, the court deems itself fully advised and enters the following order.

### FACTS

In the fall of 1979, plaintiff entered into an agreement with the defendants whereby defendants would establish an account for plaintiff for the purchase and sale of precious metals. The account was expressly conditioned on the stipulation that defendants were not to transact any business without the prior express authorization of plaintiff. Plaintiff alleges that on or about February 21, 1980, he was told that his account was worth approximately $20,000 to $22,000. Plaintiff further alleges that he instructed defendants to sell all of his precious metals upon the representation, but that they did not do so. Instead, they sold

the account sometime later for about $500. The Complaint states nine separate causes of action, including breach of contract, violation of the Commodities Exchange Act, breach of fiduciary duty, intentional and negligent misrepresentation, common law fraud, violation of federal securities laws (§ 10(b)), and state securities fraud.

## INTRODUCTION

Defendants' motion cites five grounds for dismissing plaintiff's Complaint: 1) failure to make a short, plain statement of the grounds upon which jurisdiction depends; 2) unavailability of an implied private right of action under the Commodities Exchange Act, 7 U.S.C. §§ 1–24 (1976); 3) failure to exhaust administrative remedies; 4) failure to state a claim under section 10(b) of the Securities Exchange Act of 1934; and 5) dismissal of pendent states claims where federal claims are dismissed before trial.

For the purpose of this motion, the material allegations of the Complaint are taken as true, *Walker Process Equipment v. Food Machine & Chemical Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965); but conclusions of law and unwarranted deductions of fact are not taken as true, *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir. 1957).

## I. JURISDICTION AND VENUE

Defendant contends that plaintiff has failed to make a short plain statement of the grounds upon which jurisdiction depends. *See* rule 8(a)(1), Federal Rules of Civil Procedure. This defect has been cured by the Amended Complaint. The court has jurisdiction to determine whether plaintiff has stated a cause of action under the Commodities Exchange Act (CEA) or the Securities Exchange Act of 1934 (1934 Act) by virtue of 28 U.S.C. §§ 1331, 1337 (1976). *See Burks v. Lasker*, 441 U.S. 471, 476 & n.5, 99 S.Ct. 1831, 1836 & n.5 (1979); *Chipser v. Kohlmeyer & Co.*, 600 F.2d 1061, 1067 (5th Cir. 1979); *Sims v. Western Steel Co.*, 551 F.2d 811, 819 (10th Cir.), *cert. denied*, 434 U.S. 858, 99 S.Ct. 182, 54 L.Ed.2d 131 (1977) (federal court has power initially

to find and determine whether it has jurisdiction). Venue has not been contested and is properly laid in the Central Division of this court under 28 U.S.C. § 1391(b), (c) (1976).

## II. PRIVATE RIGHT OF ACTION UNDER THE COMMODITIES EXCHANGE ACT

Defendants contend that there is no longer an implied right of action under section 4b of the Commodities Exchange Act (CEA), 7 U.S.C. § 6b (1976), because of a substantial restructuring of the statutory scheme. In support of their argument, defendants have undertaken a vigorous analysis of the legislative history and the purposes of the CEA, following the approach suggested by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Plaintiff has likewise undertaken a similar analysis, but he reaches the opposite conclusion.

Whether a private right of action exists under the CEA, and specifically under section 4b, has never been addressed by the Supreme Court. It also appears to be an open issue in the Tenth Circuit. *Master Commodities, Inc. v. Texas Cattle Management Co.*, 586 F.2d 1352, 1356 (10th Cir. 1978) ("If a private right of action is to be implied under this section, wilful or fraudulent action is required for recovery.").

There is a strong division among the other courts of appeal that have considered the question. *Compare Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980) (upholding private right of action under the CEA over a strong dissent), *cert. denied sub nom. New York Mercantile Exchange v. Leist*, —— U.S. ——, 101 S.Ct. 1346, 67 L.Ed.2d 332, (1980) *and Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.2d 216 (6th Cir. 1980) (reviewing the issue *sua sponte* and holding that an implied private right of action survived the 1974 amendments to the CEA), *cert. denied*, —— U.S. ——, 101 S. Ct. 1971, 68 L.Ed.2d 292 (1980) *with Rivers v. Rosenthal & Co.*, 634 F.2d 774, 792 (5th Cir. 1980) (no implied right of action

under CEA after the 1974 amendments). Two circuits have perfunctorily decided that the private right of action implied in *Goodman v. H. Hentz & Co.*, 265 F.Supp. 440 (D.Ill.1967), continued despite the 1974 amendments. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman*, 593 F.2d 129, 133 n.7 (8th Cir.), *cert. denied*, 444 U.S. 838, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979); *Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96, 103 & n.8 (7th Cir. 1977). The district courts that have considered the question are similarly divided, with a slight majority upholding the cause of action. *See Rivers v. Rosenthal & Co.*, 634 F.2d at 778 & n.7.

■ The primary touchstone for determining whether an implied right of action exists under a statute is whether Congress *intended* that there be such a cause of action. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 23, 100 S.Ct. 242, 245, 249, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 576, 99 S.Ct. 2479, 2485, 2489, 61 L.Ed.2d 82 (1979). *See also Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975); *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). This requirement recognizes, at least in part, that the role of federal courts is functionally limited by the Constitution and that a cause of action is to be created only by Congress. *Rivers v. Rosenthal & Co.*, 634 F.2d at 781 n.11, 789; *see Cannon v. University of Chicago*, 441 U.S. at 742–49, 99 S.Ct. at 1981–85 (Powell, J., dissenting); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. at 25, 100 S.Ct. at 249 (Powell, J., concurring).

The Fifth Circuit, in the *Rivers* case, has undertaken a thorough and fair-minded analysis of the language of the CEA as amended and its legislative history. This court need not repeat that effort here. The Fifth Circuit concluded that the search for congressional intent to imply a private right of action yields "a result that might be described as emphatically equivocal." 634 F.2d at 792. Accepting this analysis, the issue becomes who has the burden to show such an intent. This is one of the dividing points between the Second and the Fifth Circuit opinions. The Second Circuit stated:

Whether rightly or wrongly in light of recent Supreme Court jurisprudence, the courts have [implied rights of action under] statutes of similar import in related fields, and Congress knew that they had done so. *The burden lies on those who urge that the 1974 amendments demonstrate an intention to change prior law* . . . .

*Leist v. Simplot, supra; see Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.2d at 232–34. The Fifth Circuit states the opposite view:

So significant a transfiguration of the extant statutory framework [as resulted from the 1974 amendments] is, itself, a wholesale obliteration of the prior status quo . . . . [The significant "overhaul" of the remedial mechanisms] in effect *creates a presumption against the implication* of yet another unexpressed judicial means of enforcement and remedy. This "presumption" against finding an implied right of action may be overcome, but only upon "clear contrary evidence of legislative intent" affirmatively to provide such an implied right in addition to express remedies.

*Rivers v. Rosenthal*, 634 F.2d at 784 (citing *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. at 19, 100 S.Ct. at 247 ("where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."); *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 419, 95 S.Ct. 1733, 1738, 44 L.Ed.2d 263 (1975)).

■ After a careful review of the several authorities addressing the issue, the court is persuaded that the Fifth Circuit, in the *Rivers* opinion, has stated the better view on whether a private right of action is to be implied under the CEA (for the purposes here, under section 4b). The court adopts the reasoning of the *Rivers* opinion, and

holds that the 1974 amendments to the CEA extinguished any private right of action previously available under the CEA. Defendants' Motion to Dismiss as to the portions of the amended complaint purporting to state an implied right of action under the CEA is granted.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ Because of the ruling that plaintiff has no implied private right of action under the CEA, the court need not reach the arguments addressed by counsel concerning primary jurisdiction. Plaintiff's only remedy for violation of the antifraud provisions of the CEA is with the Commodities Futures Trading Commission.

### IV. COMMODITIES ACCOUNT AS A SECURITY

Plaintiff's amended complaint asserts a claim for securities fraud under section 10(b) of the Securities Exchange Act of 1934 (1934 Act), 15 U.S.C. § 78j (1976). The dispositive inquiry on this motion to dismiss is whether the amended complaint states a "security" within the meaning of that section. Commodity accounts are not listed specifically in the definition of "security" in section 3(a)(10) of the 1934 Act. Plaintiff therefore contends that his account with defendant constitutes an "investment contract," which is included in the statutory definition.

The Supreme Court has recently restated the test, originally established in *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1947), used to define an investment contract: "To determine whether a particular financial relationship constitutes an investment contract, '[t]he test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.'" *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 558, 99 S.Ct. 790, 796, 58 L.Ed.2d 808 (1979) (citing *Howey*).

■ Plaintiff has clearly alleged an investment of money, so the inquiry is whether the complaint states a common enterprise with profits to come solely from the efforts of others. *See United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975).

*A. Common Enterprise*—Plaintiff has not alleged the involvement of other investors in a common venture. Some courts require some pooling of assets among investors, i. e., "horizontal commonality," in order for the common enterprise element to be met. *See, e. g., Hirk v. Agri-Research Council, Inc.*, 561 F.2d at 100–01; *Milnarik v. M–S Commodities, Inc.*, 457 F.2d 274, 276 (7th Cir.), *cert. denied*, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972). Other courts have held that the only commonality required is that of promoter and investor, i. e., "vertical commonality." *See, e. g., SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 & n.7 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973); *Troyer v. Karcagi*, 476 F.Supp. 1142, 1147 & nn.6&7, 1148 (S.D.N.Y.1979); *Rochkind v. Reynolds Securities, Inc.*, 388 F.Supp. 254, 256–57 (D.Md.1975).

■ The court has previously adopted the latter view, holding that a common enterprise is " 'one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investments or of third parties.' " *Securities Investor Protection Corp. v. Associated Underwriters, Inc.*, 423 F.Supp. 168, 178 (D.Utah 1975) (quoting *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d at 482 & n.7). The rationale of this approach is that it makes no sense to penalize the single investor simply because he happens to be alone in his misfortune. *See Rochkind v. Reynolds Securities, Inc.*, 388 F.Supp. at 257. The court still adheres to this view, and since at least the *form* of vertical commonality is present in the amended complaint, the court turns now to the *substance* of the common enterprise to see if the fortunes of the plaintiff are so interwoven with the efforts and success of

the defendants that the third element— profits to come solely from the efforts of others—is met.

*B. The Efforts of Others*—The "solely from the efforts of others" requirement has been relaxed by some courts. *See, e. g., Crowley v. Montgomery Ward & Co.*, 570 F.2d 877, 880 (10th Cir. 1978); *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 479–83 (5th Cir. 1974); *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d at 482; *Cordas v. Specialty Restaurants, Inc.*, 470 F.Supp. 780 (D.Or.1979). *But see United Housing Foundation v. Forman*, 421 U.S. at 852 n.16, 95 S.Ct. at 2060 n.16 (expressly declining to address whether "solely" should be given a broader meaning as in *Glenn W. Turner*). The Tenth Circuit in *Crowley* indicated that it would scrutinize the quality of the investor's efforts, stating that the "contribution of time and effort is only a part of the test. Consideration must be given to *control* over the factors essential to success of the enterprise." 570 F.2d at 880. Thus, the Tenth Circuit has indicated that it would broaden the "solely" element at least to the extent of discounting efforts of the investor that do not involve significant control over the success of the enterprise.

■ In paragraph 8 of the amended complaint, plaintiff alleges the following:

8. That in the Fall, of 1979, the Plaintiff and the Defendants, entered into an agreement wherein the Defendants were to buy and sell precious metals for the Plaintiff, under two express conditions:

(a) That the Defendants were not to transact any business *without the prior express authorization of the Plaintiff*;

(b) That the account was to be handled wherein the Plaintiff was not to be obligated for any additional sums for any transaction, *without prior express authorization*, and that each transaction was to be paid in full before any subsiquent [*sic*] transaction was to occurr [*sic*].

(Emphasis added). These express conditions in the agreement gave plaintiff sufficient control over the account that it is to be considered a "nondiscretionary account." *See Poplar Grove Planting & Refining Co.*

*v. Bache Halsey Stuart, Inc.*, 465 F.Supp. 585, 588–89 (M.D.La.1979); *McCurnin v. Kohlmeyer & Co.*, 340 F.Supp. 1338, 1341 (E.D.La.1972); 1 A. Bromberg & L. Lowenfels, *Securities Fraud & Commodities Fraud* § 4.6, ¶¶ 431–432 (Supp.1975).

Courts have held in some instances that investors in discretionary commodities accounts rely sufficiently on the efforts of others for the accounts to constitute an investment contract. *See, e. g., Moody v. Bache & Co.*, 570 F.2d 523, 526 (5th Cir. 1978); *Troyer v. Karcagi*, 476 F.Supp. 1142, 1147 (S.D.N.Y.1979). *See also SEC v. American Commodity Exchange, Inc.*, 546 F.2d 1361, 1366–67 (10th Cir. 1976) (commodity futures options were "securities" where investor was subjected to risk over which he had no control). *But see E. F. Hutton & Co. v. Schank*, 456 F.Supp. 507, 512–13 (D.Utah 1976). However, where the account is *nondiscretionary*, the reliance and control are such that the third element of the *Howey* test is not met. *See Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 465 F.Supp. at 588–89; *E. F. Hutton & Co. v. Schank*, 456 F.Supp. at 512–13 (commodities accounts, *whether or not discretionary*, are not securities within the contemplation of the securities laws).

■ In the instant case, the control afforded plaintiff by the terms of the agreement was not such that profits were expected to come solely from the efforts of others—even under a broader definition of "solely." The agreement provided that plaintiff had the final say as to whether to buy, sell, or wait. If that agreement was breached, it is a matter of state contract law, or possibly a concern for the Commodities Futures Trading Commission in conjunction with the alleged violations of the CEA.

■ As a further consideration, the Commodities Futures Trading Act of 1974, with its exclusive grant of jurisdiction over commodity trading, has filled the protective regulatory gap that may have previously justified the expansion of the securities laws to this type of problem. It is there-

fore unnecessary for the court to attempt to stretch the protection of the securities laws further than it may legitimately be extended. *See Fischer v. Rosenthal & Co.*, 481 F.Supp. 53, 54–55 (N.D.Tex.1979); *E. F. Hutton & Co. v. Schank*, 456 F.Supp. at 512–13; 7 U.S.C. § 2 (1976). And finally, in light of the court's ruling that there is no implied right of action under the CEA, it comports with judicial common sense and economy not to recreate an action for fraud under securities law based on the same facts that will be presented before the Commodities Futures Trading Commission.

The court holds that the commodity account in question here does not constitute a security within the meaning of section 10(b) of the 1934 Act, and accordingly, the motion to dismiss the eighth cause of action of the amended complaint is granted.

### V. PENDENT CLAIMS

Plaintiff has failed to state a claim under the Commodities Exchange Act and the Securities Exchange Act of 1934. Furthermore, he has not properly alleged diversity jurisdiction under 28 U.S.C. § 1332. Where a corporation is named as a party, the complaint must affirmatively allege the state in which the corporation was incorporated and where it has its principal place of business in order to allege diversity jurisdiction. *American Motorists Insurance Co. v. American Employers' Insurance Co.*, 600 F.2d 15 (5th Cir. 1979). The court exercises its discretion to dismiss the pendent state claims. At this early stage of the proceedings, the case would be more appropriately dismissed and entertained in state court. *See REA Express v. Travelers Insurance Co.*, 554 F.2d 1200 (D.C.Cir.), *cert. denied*, 434 U.S. 858, 98 S.Ct. 182, 54 L.Ed.2d 131 (1977); *Fischer v. Rosenthal & Co.*, 481 F.Supp. at 57. Furthermore, plaintiff may pursue whatever remedy he may have before the Commodities Futures Trading Commission.

Accordingly,

IT IS HEREBY ORDERED that defendants' Motion to Dismiss is granted, and the amended complaint is dismissed without prejudice.