Winslow M. **CADY** and National Resources Group, Inc., Plaintiffs,

v.

**A.G. EDWARDS & SONS, INC.**, et al., Defendants.

Civ. No. C85–1050G.

United States District Court, D. Utah, C.D.

Sept. 22, 1986.

Ronald C. Barker, Salt Lake City, Utah, for plaintiffs.

Michael R. Murphy, Virginia S. Smith, Salt Lake City, Utah, for defendants.

J. THOMAS GREENE, District Judge.

The matter came on regularly for hearing on February 4, 1986, on defendants' Motion to Dismiss or for Summary Judgment and Motions to Compel Arbitration and Stay Judicial Proceedings. Plaintiffs were represented by Ronald C. Barker and defendants were represented by Michael R. Murphy and Virginia S. Smith. Plaintiffs and defendants both submitted extensive memorandums of law and the court heard oral argument. At the conclusion of oral argument the court granted plaintiffs' oral Motion to Amend the Complaint with reference to an alleged issue of fraud in the inducement of the arbitration clauses within the agreements at issue here. Thereafter an Amended Complaint was filed, and

on June 24, 1986, there was a further hearing, after which the court took all motions and matters under advisement. Since then, counsel for both parties have submitted supplemental authorities in additional communications to the court. The court now being fully advised enters its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Plaintiff National Resource Group ("NRG") asserts claims arising from trading accounts for commodities futures with defendant A.G. Edwards ("Edwards").[1] NRG alleges that representatives of Edwards approached NRG with an oil futures investment program. Edwards allegedly promised NRG that it would guarantee a return of $5,000 per month on an investment of $50,000. NRG determined to invest with Edwards, and on January 21, 1985, NRG provided Edwards with a corporate resolution consenting to the establishment of a commodities futures account with Edwards. The same day officers of NRG executed two customer agreements. Both agreements contained arbitration clauses. When this dispute arose, Edwards timely demanded arbitration and has otherwise complied with the provisions of the arbitration agreements.

NRG asserts eleven claims for relief in its complaint. Of these, NRG's first, second, third and fourth claims are based on alleged violations of the Securities Act of 1933, 15 U.S.C. §§ 77a–77bbbb (1982), the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78kk (1982), and the Utah Uniform Securities Act, Utah Code Ann. §§ 61–1–1 to –30 (1978). NRG's fifth claim seeks civil relief for alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1982), and the sixth claim alleges violation of the Utah Racketeering Influences and Criminal Enterprise Act (RICE), Utah Code Ann. §§ 76–10–1601 to –1608 (Supp.1986). The other claims are for breach of fiduciary duty, common law fraud, breach of contract and negligent misrepresentation.

Edwards urges the court to dismiss NRG's securities claims, arguing that commodities futures accounts are not securities. Edwards further argues that NRG's RICO claims should be dismissed, or in the alternative submitted to arbitration or stayed pending arbitration. Finally, Edwards urges that all other claims be referred to arbitration. NRG rejects all of the aforesaid contentions, and as a preliminary matter argues that the validity of the arbitration clauses should be adjudicated since allegedly such were induced by fraud.

### Alleged Fraud in the Inducement of the Arbitration Clauses

■ NRG's amended complaint alleges generally that there was fraudulent inducement in the execution of the contracts in question. It is alleged that Edwards' representative explained that the form executed by plaintiffs was the standard form for customers, but that there was no discussion of contract terms and no meeting of the minds. Certain claimed oral representations were made to NGR's representative, Mr. Badger, which were later found not to be included in the written contract. As a result, it is asserted that Mr. Badger would not have agreed to the various contractual terms without inclusion of the oral representations, and would not have agreed to the provisions requiring arbitration. No specific reference or claimed misrepresentation was made as to the arbitration clauses.

In *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) the Supreme Court interpreted Section 4 of the federal Arbitration Act, 9 U.S.C. § 4 (1982). The Court in *Prima Paint* stated:

[A]rbitration clauses as a matter of federal law are "separable" from the contracts in which they are embedded, and *... where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the*

---

**1.** Plaintiff Winslow Cady has already submitted his claims to arbitration; therefore, the court will address only the claims asserted by National Resources Group, Inc.

*claim that the contract itself was induced by fraud.*

*Id.* 388 U.S. at 402, 87 S.Ct. at 1805 (emphasis added). That is the situation here. NRG has failed to plead with specificity factual allegations which go to fraudulent inducement of the arbitration clause itself, rather than the contract generally. NRG's allegation that the form used was represented to be the standard form in use also does not support a claim of fraud as to the arbitration provisions. *See E.F. Hutton & Co. v. Schank,* 456 F.Supp. 507 (D.Utah 1976).[2]

The court rules that alleged of fraud in the inducement of the contract generally does not require court adjudication. Accordingly, the claim of fraud in the inducement set forth in the amended complaint is referred to arbitration.

*Claims Concerning Commodities Futures Accounts as Securities*

■ Counsel have presented extensive argument and case authority as to whether the trading accounts concerning the oil futures investment program constitute "securities." NRG asserts that such constitute "investment contracts" included within the statutory definition of "security" under 15 U.S.C. § 78c(a)(10) (1982) of the Securities Exchange Act of 1934. As such NRG contends that it invested money in a common enterprise with profits to come solely from the efforts of others under the so-called *"Howey* test" established and reiterated by the Supreme Court.[3] Edwards urges, based upon the wording of the trading accounts, that there is no common enterprise and that in any event profits would not derive solely from the efforts of others. However, NRG has alleged facts sufficient to establish "common enterprise," [4] and has insisted that in practice the trading accounts were discretionary so that profits would derive solely from the efforts of Edwards.[5] However, it is unnecessary to determine whether the commodities futures

2. In *Schank,* the court noted that defendant had no knowledge of the existence of an arbitration provision in the customer agreement, but held that there was no " 'misrepresentation,' intentional or otherwise, concerning the contents of the contract." 456 F.Supp. at 512.

3. *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). To determine whether a particular financial relationship constitutes an investment contract, the Court in *Howey* said that "[t]he test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* 328 U.S. at 301, 66 S.Ct. at 1104. The test was reiterated in *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 558, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979). *See also United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975).

4. NRG has alleged that Edwards' involvement went far beyond receiving commissions for investing according to NRG's directions. NRG contends that the "common enterprise" was created by oral representations whereby Edwards guaranteed to NRG profits of $5000 per month. In such cases the court will look outside the written document to determine the agreement of the parties. *Commercial Iron & Metal Co. v. Bache & Co., Inc.,* 478 F.2d 39, 43 (10th Cir. 1973).

5. This court has ruled that nondiscretionary accounts fail the *Howey* test as lacking requisite control concerning profits derived solely from the efforts of others. *Walsh v. International Precious Metals Corp.,* 510 F.Supp. 867 (D.Utah 1981). The court said in *Walsh:*

> These express conditions in the agreement gave plaintiff sufficient control over the account that it is to be considered a "nondiscretionary account."
>
> ... [W]*here the account is nondiscretionary, the reliance and control are such that the third element of the Howey test is not met.*
>
> ... [T]he control afforded plaintiff by the terms of the agreement was not such that profits were expected to come solely from the efforts of others.... The agreement provided that plaintiff had the final say as to whether to buy, sell, or wait. If that agreement was breached, it is a matter of state contract law, or possibly a concern for the Commodities Futures Trading Commission in conjunction with the alleged violations of the CEA.

*Id.* at 872 (emphasis added). Other courts have held that even discretionary commodities trading accounts fail the *Howey* test because no common enterprise exists between the investor and the brokerage firm. In *Brodt v. Bache & Co.,* 595 F.2d 459 (9th Cir.1978) the court said: "Merely furnishing investment counsel to another for a commission, even when done by way of a discretionary commodities account, does not amount to a 'common enterprise.'" *Id.* at 462. In the case at bar, NRG admits that the language of the accounts limited Edwards to transactions approved by NRG and therefore were

accounts here meet all three aspects of the *Howey* test, because we conclude that this court has no jurisdiction to apply securities laws to such accounts.

In 1974 Congress significantly amended the Commodity Exchange Act by creating the Commodities Future Trading Commission ("CFTC") and granting to the CFTC exclusive regulatory jurisdiction over commodities trading, including commodities futures accounts.[6] The difficult question raised by these amendments is whether Congress intended that private litigants be able to bring private securities suits even though Congress expressly precluded the SEC from applying securities laws to "commodities" within the CFTC's exclusive jurisdiction. We follow this court's holding in *E.F. Hutton & Co. v. Schank*, 456 F.Supp. 507 (D.Utah 1976) that such controversies concerning commodities futures accounts are within the exclusive jurisdiction of the CFTC. The court said:

The Commodities Futures Trading Commission Act of 1974 [the CFTC] has, without question, filled the protective regulatory gap which was the motivation for expanding the coverage of the securities laws....

Given the compatibility of the protections against fraudulent conduct given to investors, there is little reason to attempt to construe *Howey* so as to include discretionary commodities accounts within the bailiwick of the securities acts and the SEC. Indeed, because of the exclusive jurisdiction which Congress granted the CFTC over "accounts, agreements, and transactions involving contracts of sale of a commodity for future delivery," it would fly in the face of express Congressional intent to do so.

*Id.* at 513. At least one commentator,[7] and other courts which have analyzed the legislative history,[8] have agreed with the court

---

nondiscretionary in form. NRG alleges, however, that the statements and conduct of the defendant rendered the accounts discretionary. We express no opinion as to whether the allegations and conduct are sufficient to transform the nondiscretionary accounts into discretionary accounts, and we do not reach the issue whether discretionary commodities accounts meet the *Howey* test for purposes of the securities laws.

**6.** *See* The Commodity Futures Trading Commission Act of 1974, Pub.L. No. 93–463, 88 Stat 1389 (codified in scattered sections of 7 U.S.C. §§ 1–24 (1982)). The amendment greatly expanded the definition of a commodity:

The word "commodity" shall mean ... all other goods and articles ... and all services, rights and interests in which contracts for future delivery are presently or in the future dealt in: *Provided,* That the Commission shall have exclusive jurisdiction ... with respect to accounts, agreements ... and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated pursuant to section 7 of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title....

7 U.S.C. § 2 (1982).

**7.** *See* Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public Policy,* 29 Vand.L.Rev. 1, 32–36 (1976):

Strong public policy considerations likewise militate against the idea that private remedies

under other regulatory statutes should remain available even after the CFTC's "exclusive jurisdiction" has preempted those regulatory agencies.... It is reasonable to assume that Congress, having created a regulatory agency under the same statute, intends for that agency to exercise the requisite judgment and to provide the needed uniformity. Otherwise, the key decisions influencing the scope and direction of federal regulatory policy in that field would be left to a variety of different courts responding to piecemeal advocacy of private interests.

*Id.* at 35.

**8.** *See George v. Omni Capital International,* 795 F.2d 415 (5th Cir.1986). The court in *George* explained that it is consistent with Congressional intent, as expressed in the CEA, to deny private relief because "[p]rivate actors under the securities laws might engraft policies and standards inconsistent with those developed under the CEA." *Id.* at 422. *See also Mallen v. Merrill Lynch, Pierce, Fenner & Smith,* 605 F.Supp. 1105 (N.D.Ga.1985). In *Mallen* the court refused to allow a private litigant to bring a securities claim based on a trading account for stock index futures, and held that application of the investment contract test of *Howey* was "faulty." The court stated:

In focusing on the most general term in the SEC statute, this analysis ignores specific terms in the jurisdictional statutes of the SEC and CFTC. It is a basic rule of construction, for complex regulatory legislation as well as simple legal documents, that the specific controls the general....

in *Shank* that it would be anomalous to conclude that Congress intended to preempt the SEC and yet allow private securities suits.

We hold that the commodities futures accounts at issue herein are subject to the exclusive jurisdiction of the CFTC. Accordingly Counts 1, 2, 3 and 4 are dismissed.

*RICO and RICE Claims*

■ As a result of this court's determination that the commodities futures accounts here are commodities and not securities, count 5 of NRG's complaint, alleging violation of the Racketeer Influenced and Corrupt Organization Act (RICO), fails for lack of cognizable predicate offenses. *See* 18 U.S.C. § 1961(1) (1982). Likewise, count 6 of NRG's complaint fails to allege predicate offenses (other than the sale of a security) which fall within the categories delineated in the Utah Racketeering Influences and Criminal Enterprise Act (RICE). *See* Utah Code Ann. § 76–10–1602 (Supp. 1986). *See Bache Halsey Stuart Shields v. Tracy Collins Bank*, 558 F.Supp. 1042, 1047 (D.Utah 1983) ("[T]he Utah definition requires that the act be 'illegal under the laws of Utah'.... [and the] Act suggests that the predicate crimes must be alleged with particularity.")

■ In any event, both counts 5 and 6 fail to plead the existence of a pattern of racketeering activity and therefore are dismissed. Here a single fraudulent scheme is relied upon, albeit multiple acts allegedly were committed by defendants. This fails to present the requisite pattern. See *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985); *Grant v. Union Bank*, 629 F.Supp. 570, 577–79 (D.Utah 1986).

*Other Claims*

All remaining claims are ordered to be submitted to arbitration in accordance with the terms of the arbitration clauses.

. . . . .

Finally, the ultimate effect of [a private securities suit is that such suit] defeats the fundamental congressional design in revamping the Commodity Exchange Act of 1974 and

The Court finds no basis for Rule 11 sanctions.

This Memorandum Decision *and Order* will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

granting exclusive jurisdiction to the new CFTC—to avoid a duplicative or contradictory regulatory structure. *Id.* at 1113–14.