GARFF REALTY CO. v. BETTER BULDINGS, Inc.

No. 7489.  Decided August 20, 1951.  (234 P. 2d 842.)

See 12 C. J. S., Brokers, sec. 58; Signing contract without reading it.  12 Am. Jur., Contracts, sec. 137; 59 A. L. R. 809.

*Pugsley, Hayes & Rampton,* Salt Lake City, for appellant.

*Aldon J. Anderson,* Salt Lake City, for respondent.

McDONOUGH, Justice.

Plaintiff sued defendant for real estate broker's commission. From a judgment entered on a verdict directed in favor of plaintiff, defendant appeals. Two principal contentions are made on this appeal: (1) That the trial court erred in granting plaintiff's motion for a directed verdict for the reasons (a) that plaintiff failed to prove any consideration for the contract, and (b) that plaintiff failed to prove there was any commission established by the Salt Lake Real Estate Board for transactions of this nature. (2) That the court erred in refusing to allow the manager of defendant corporation to testify regarding the circumstances under which the earnest money receipt and agreement was signed.

It is undisputed that plaintiff procured the signature of the purchaser on the earnest money receipt and agreement for the purchase of the property. Such agreement was prepared by plaintiff in the presence of the defendant as seller and in the presence of the purchaser, and it contains the following clause:

"The seller agrees in consideration of the efforts of the agent in procuring a purchaser to pay said agent the rate of commission as established by the Salt Lake Real Estate Board."

Defendant argues that it was error to direct a verdict in view of the testimony of the manager of defendant corporation to the effect that the purchaser who executed the aforesaid agreement had stated serveral days prior to the date the agreement was prepared by plaintiff that he intended to purchase the real estate; and that defendant was entitled to have submitted to the jury the question as to whether plaintiff had actually procured the purchaser. The argument disregards the fact that until a prospective buyer actually signs an enforceable contract whereby he agrees to purchase the property, he does not become a purchaser. The evidence that plaintiff procured the signature of the purchaser on the earnest

money receipt and agreement of purchase in this case, is not controverted. The dispute in the evidence as to which of the parties first contacted the man who actually purchased the property is immaterial, insofar as this controversy is concerned. There were obviously some efforts on the part of plaintiff to induce the prospective purchaser to become the purchaser by signing the agreement. There was legal consideration for the promise to pay a commission.

With respect to the contention that there was no proof that this type of transaction was one for which a commission had been provided, the evidence clearly shows that Exhibit "B" was received in evidence without objection. It specifies that

"Commissions on the sale of improved property shall be not less than: 5% on the first $100,000."

Such provision is a part of the fee schedule of the Salt Lake Real Estate Board. Despite the evidence contained in Exhibit "B" as to the rate of commission, defendant contends that by virtue of other provisions of Exhibit "B" no applicable rate of commission has been established. It cites Rule 13 of the Salt Lake Real Estate Board, which provides in part as follows:

"Members of the multiple listing bureau shall not work on, place signs on, or advertise for sale any property that is not regularly listed with some member of the multiple listing bureau."

Defendant contends that it would be inconsistent for the multiple listing bureau rules to establish a rate of comission for the sale of unlisted property when such rules by their very terms prohibit members from selling unlisted property. This contention is in error. The provision in the contract between plaintiff and defendant, refers to rules of the Salt Lake Real Estate Board for the purpose of determining the rate of commission to be applied under the contract for services performed in securing a buyer.

The fact that a member of the Real Estate Board who is also a member of the multiple listing bureau, is not permitted, as a member of the latter, to attempt to sell property not listed with the multiple listing bureau, is a matter governing the relationship between plaintiff and the listing bureau, and it in no way affects the rights of the parties to this controversy. We know of no reason why parties to a contract may not refer therein to the rules of a board or commission to establish a rate of compensation regardless of membership of any of the parties on such board or commission.

In this case, plaintiff had a conversation with defendant's manager prior to the sale. While plaintiff Garff testified that plaintiff charged only 50% of the 5% commission because the defendant's manager said he was a broker, the manager of defendant denied there was any conversation on that subject, and he testified that he never saw Garff until the day the agreement was signed. The defendant's manager further testified that the purchaser stated that Garff was a real estate dealer and was "taking care of him on this deal", and that Garff then produced a contract. It is undisputed that defendant's manager was a real estate broker, and consequently he had handled sales of properties on prior occasions. He testified that he had not paid any commission on the sale of any other properties in the subdivision, but that did not alter his obligation to a pay a commission under his written agreement for the sale of the property here in question. Had plaintiff sued for the entire commission, there might have been an issue for the jury, but plaintiff merely asked for the minimum amount payable in any event.

The trial court properly sustained the objection to the question.

"At the time you signed this were you aware of the provision in that last paragraph?"

There was no plea of mistake, fraud or overreaching, or of misrepresentation. The answer of the defendant to the effect that the agent of

"defendant who executed said agreement was not aware of the provision of said agreement relating to the payment of the commission and that it was not the intention of the defendant to become bound for the payment of any commission,"

does not sufficiently state any legal defense. The governing rule is thus stated in 12 Am. Jur., Contracts, sec. 137, pp. 628-29:

"Ignorance of the contents of an instrument does not ordinarily affect the liability of one who signs it. * * * If a man acts negligently and in such a way as to justify others in supposing that the writing is assented to by him, he will be bound both at law and in equity, even though he supposes the writing is an instrument of an entirely different character. The courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not mislead as to its contents and who sustains no confidential relationship to the other party cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it. If the contract is plain and unequivocal in its terms, he is ordinarily bound thereby. * * * To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements and to remove the temptation and possibility of perjury, which would be afforded if parol evidence were admissible. * * *"

The defendant knew that Garff was a real estate broker and that the prospective purchaser came with him. The agreement by its very form and terms shows that the real estate broker procured the purchaser and brought about a meeting of the minds between the seller and buyer in the form of an enforceable contract of sale and purchase.

There was no issue of fraud or of mutual mistake to be submitted to the jury. There was no dispute in the material

evidence which would raise an issue as to the right of plaintiff to recover the minimum amount of commission claimed. The trial court did not err in directing a verdict under the circumstances. The judgment is therefore affirmed, with costs to respondent.

WOLFE, C. J., and WADE, CROCKETT and HENRIOD, JJ., concur.