Don K. FULLMER et al., Plaintiffs, Respondents, and Cross-Appellant,

v.

Ethel W. BLOOD, Defendant and Appellant.

No. 14082.

Supreme Court of Utah.

Feb. 18, 1976.

Denis R. Morrill and J. Rand Hirschi, of Prince, Yeates, Ward & Geldzahler, Salt Lake City, for defendant-appellant.

Frank A. Allen, St. George, for plaintiffs-respondents.

CROCKETT, Justice:

Plaintiffs, Don K. Fullmer, his wife Carma M. Fullmer, and his brother Dean Fullmer (the real party in interest), brought this action to quiet title to certain real property near Hurricane, Utah, and to declare forfeiture of certain sums that had been paid under a uniform real estate contract by defendant Ethel W. Blood (and her predecessors). Upon trial to the court, findings were made and judgment entered that there had been such forfeiture and that the plaintiff Dean Fullmer was the owner of the property. Defendant appeals challenging the findings and judgment.

In February of 1969 plaintiff Don K. Fullmer and Keith W. Naylor, his then partner in a business known as Cal-Horizon Products and Imperial Products entered into a Uniform Real Estate Contract to purchase the lands in question from Winford and Mona Spendlove. The price was $47,817, payable $6,000 down, $6,000 on May 16, 1969, and in ten equal annual installments until the principal and interest at six per cent on deferred balance had been paid. Despite some disputed evidence and contentions to the contrary, the trial court found that the property was purchased with partnership funds and was intended to be partnership property. On August 29, 1970, Keith Naylor entered into a contract with his partner, Don Fullmer, to purchase the latter's interest in the partnership. A month later, September 22, 1970, Mr. Naylor assigned his interest in the real property in question to his mother-in-law, Ethel W. Blood. The stated consideration was that Mrs. Blood canceled a substantial debt ($2,500 or more) Mr. Naylor owed her. She made the annual payment for 1970, but she neither made nor tendered any further payments until after receiving the notice to pay or suffer forfeiture as related below.

By December 1971, Mr. Naylor was behind in his payments to Don Fullmer for the purchase of the partnership. On December 26, 1971, Mr. Don Fullmer obtained a judgment in California against Mr. Naylor. On April 28, 1972, Don Fullmer filed the California judgment in the District Court of Washington County and obtained a judgment thereon. He proceeded to have an execution issued and levied upon the subject property; then bid in and purchased Mr. Naylor's interest in it. Shortly thereafter, the defendant Ethel Blood gave plaintiffs notice of the claimed prior assignment from her son-in-law Keith Naylor and of her interest in the property.

The next pertinent occurrence is that on August 12, 1973, Don Fullmer and his wife assigned all their interest in the subject property to Don's brother, plaintiff Dean Fullmer; and on March 9, 1974, Dean Fullmer also acquired by assignment the interest of the original sellers, the Spendloves. The status of the purchase contract on the property at that time was that the annual payments for 1971, 1972 and 1973 had not been made. On March 26, 1974, Dean Fullmer notified the defendant by certified mail that, if the 1973 payment was not made within five days, all payments previously made would be forfeited and their interest in the property terminated, as provided by the terms of the contract. She recieved this notice on April 1, 1974. When the defendant had not replied by April 12, 1974, Dean Fullmer gave her notice that her interest was terminated, and all sums paid had been forfeited. On June 5, 1974, the defendant tendered the 1973 payment, but that tender was refused; and this lawsuit was filed to resolve the

dispute between the parties as to their asserted claims in the property and rights under the contract.

The heart of this controversy is: Defendant contends that the original purchase of the property by Don K. Fullmer and Keith W. Naylor was for them as individuals; that, therefore, their interest therein became as tenants in common; that when Mr. Naylor assigned his interest in the property to defendant Ethel Blood, she likewise became a co-purchaser and tenant in common with Don Fullmer; and that when the latter assigned his interest to his brother Dean Fullmer, the latter then became her tenant in common. Upon this foundation she argues that, because of the duty one co-tenant has to protect and not to impair the interest of his co-tenant (tenant in common), Dean Fullmer could not take an adverse position as seller and demand from her the alternative of payment or forfeiture. The soundness of the defendant's argument requires an analysis of the facts upon which it is predicated.

One issue in controversy, though not dispositive of this case, upon which we comment preliminarily, is the plaintiff's contention that the assignment from Keith Naylor to his mother-in-law, defendant Ethel Blood, was but an illusory inter-family arrangement; that neither the claimed debt nor its forgiveness was bona fide, so there was thus no consideration and the assignment was fraudulent and void. In support of the trial court's rejection of that contention, two observations are pertinent: First, inadequacy of consideration will not generally be deemed to vitiate an assignment.[1] Second, upon evidence differing both as to import and inferences to be drawn therefrom, the trial court was not convinced that the assignment was fraudulent.

■ Accepting the fact that the assignment was valid, foundational to the de-

fendant's position is her attack upon the court's finding that the property was purchased for the partnership. In support of her charge that this finding was in error she points out these propositions: that all of the essential documents, including the original contract, and the assignments from Keith Naylor to Ethel Blood, and from Don and Carma Fullmer to Dean Fullmer, refer to the buyers as Don Fullmer and Keith Naylor as individuals, and not as a partnership; that, similarly, throughout the trial, the property was referred to as that of Don Fullmer and Keith Naylor; that the parties submitted memorandums concerning the issue of co-tenancy; and she argues that that issue could only arise if the defendant had a half interest and the plaintiff had the other half interest.

As to the latter contentions: when a fact is in issue, unless the dispute is resolved by some manner of affirmative agreement or acknowledgment as to what the fact is, it should not be found against a party merely because he talks about it or deals with it upon an assumption in order to meet adverse contentions. That is all that appears to have happened here.

In regard to the more substantial proposition: that the contract was in the name of Don Fullmer and Keith Naylor, as individuals without mentioning the partnership, this is to be said: the stipulation of facts entered into by the parties stated that the property was purchased with partnership funds. Our statute provides that when property is purchased with partnership funds it becomes the property of the partnership, unless a contrary intention is shown.[2] This is true regardless of the form of the transaction, including where the purchase is made in the name of one or more of the partners as individuals without reference to the partnership.[3] If the defendant had wanted to be relieved from

---

1. See *Campbell v. Peter*, 108 Utah 565, 162 P.2d 754; 6 Am.Jur.2d, Assignments, Section 90.

2. Section 48–1–5, U.C.A.1953.

3. *Staats v. Staats*, 63 Utah 470, 226 P. 677 (1924); *Deming v. Moss*, 40 Utah 501, 121 P. 971 (1912).

the stipulation that the property was bought with partnership funds, that should have been done by a motion to the trial court, by her then counsel. Having failed to do so, the record stands as made, and this court cannot grant that relief on appeal.

Inasmuch as there is thus a basis to support the trial court's finding that the property had been purchased with partnership funds, there is justification for his conclusion that the interest acquired therein belonged to the partnership. Consequent to this, when Keith Naylor purchased the partnership from Don Fullmer, that included the partnership assets, i. e., the purchaser's interest in the property. This terminated the partnership and divested Don Fullmer of any buyer's interest which the partnership then had in the property; and vested it in Keith Naylor; and by the assignment from Mr. Naylor, this in turn passed to defendant Ethel Blood.

Under the purported assignment from his brother, Don Fullmer (who had already divested himself as just stated), Dean Fullmer acquired no rights as buyer under the contract; and he therefore did not become a tenant in common with the defendant Ethel Blood. However, by his acquisition from the original sellers, the Spendloves, Dean Fullmer became the owner of the seller's rights in the property. We are therefore not persuaded to disagree with the view of the trial court that there was no reason to prevent Dean Fullmer from exercising the prerogatives of a seller under the contract.

■ We then come to the further issue: whether the trial court was justified in its determination that Dean Fullmer had properly forfeited whatever rights defendant had under the contract.

Defendant cites and relies on cases that she deems helpful to her cause in attacking the forfeiture: that the law does not generally favor them[4]; that when a seller accepts late payments which allow a buyer to believe the forfeiture provision will not be strictly enforced, the court will not enforce it unless notice is given and a reasonable time allowed to make up the delinquencies[5]; and that where the forfeiture of the amount that has been paid in would be so inequitable as to be unconscionable the court of equity will refuse to enforce it.[6] It does not appear that the trial court had any disagreement with the principles set forth in those cases, nor do we. The difficulty with the defendant's position is that the facts here do not bring this case within their ambit.

We do not confront the specific problem as to whether the giving of five days' notice to make the one yearly payment or suffer forfeiture was a reasonable time. The question is whether it was a reasonable demand under the terms of the contract and the total circumstances, to which the court looks in making that determination. The facts are that Dean Fullmer wrote the letter on March 26, 1974, requiring that one annual payment be made within five days. It was received by the defendant by April 1st. He waited until April 12 without any response from the defendant before he gave notice declaring the forfeiture; and it was not until nearly two months later, on June 5th, that the defendant made any effort to comply with the demand by offering to pay one annual payment.

Determination of the question of unconscionableness of a forfeiture of amounts paid is one which also depends on the circumstances.[7] Over the five years of the life of the original contract, on the $47,817

4. *Jensen v. Nielsen*, 26 Utah 2d 96, 485 P. 2d 673 (1971); *Jacobsen v. Swan*, 3 Utah 2d 59, 278 P.2d 294 (1954).

5. *Lamont v. Evjen*, 29 Utah 2d 266, 508 P.2d 532 (1973); *Paul v. Kitt*, 544 P.2d 886 (Utah, 1975).

6. *Malmberg v. Baugh*, 62 Utah 331, 218 P. 975 (1923).

7. *Cooley v. Call*, 61 Utah 203, 211 P. 977 (1922); *Dopp v. Richards*, 43 Utah 332, 135 P. 98 (1913).

the defendant (and predecessors) had paid $12,150. The interest at 6 percent on the purchase price during that period would amount to over $11,000. According to the terms of the contract the buyers were entitled to the possession and use of the property during that time. Under those facts we cannot say that the trial court was compelled to find that forfeiture of the amount paid in was so disproportionate to any damage suffered as to be unconscionable and amount to an unenforceable penalty[8]; nor that it was for any reason unjust or inequitable to adjudicate that the defendant had no rights as purchaser under the contract or in the property.

The final issue to be considered is the plaintiffs' contention, by way of cross-appeal, that the trial court erred in refusing to award attorneys' fees pursuant to the terms of the uniform real estate contract. It provides that in case of default the defaulting party shall pay costs and expenses, including a reasonable attorney's fee incurred in enforcing the agreement, or in pursuing any remedy with respect to the property.[9] Evidence was adduced that the plaintiffs had become indebted for $2,100, for that purpose. Bearing on this problem it is significant that the trial court found against the plaintiffs' contention on one of the main issues in holding that the assignment to defendant Ethel Blood was not fraudulent, but was bona fide. Furthermore, due to the somewhat complicated fact situation in this case, it does not seem to be an unwarranted assumption that both parties thought they had some justification for making their respective claims in the property, which dispute could best be resolved by obtaining an adjudication of their rights therein. A suit of this nature involving the invocation of a forfeiture and/or the enforcement of a purchase contract invokes consideration of the principles of equity which address themselves to the conscience and discretion of the trial court. In addition to other considerations, there is the fact that the plaintiffs had received $12,150 which is forfeited and not recoverable to the defendant. In view of these circumstances we are not persuaded that the trial court abused its discretion in refusing to require defendant to pay the plaintiffs' attorneys' fees.[10]

The judgment is affirmed. The parties to bear their own costs.

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.

---

8. *Dopp v. Richards,* supra.

9. The language in the revised form of the Uniform Real Estate Contract is thus broader than that dealt with in prior cases such as *Forrester v. Cook, et al.,* 77 Utah 137, 292 P. 206; and *Leone v. Zuniga,* 84 Utah 417, 34 P.2d 699, which ruled that when the contract was forfeited the covenant for attorney's fees fell with the contract.

10. See *Paul v. Kitt,* footnote 6 above; *First Security Bank of Utah, N. A. v. Wright,* 521 P.2d 563 (Utah, 1974).