JOHN CALL ENGINEERING, INC., a Utah corporation, Plaintiff and Appellant,

v.

MANTI CITY CORPORATION, a municipal corporation, Defendant and Respondent.

No. 20075.

Supreme Court of Utah.

Sept. 28, 1987.

Robert J. DeBry, Salt Lake City, for plaintiff and appellant.

Paul R. Frischknect, Manti, for defendant and respondent.

HALL, Chief Justice:

Plaintiff John Call Engineering ("Call") appeals a trial court determination that defendant Manti City Corporation ("Manti City") was not liable under a contract for a sewer construction project. We reverse.

## I

In October 1980, Call made a presentation to the city council of Manti City, Utah, wherein he indicated his desire to work as the engineer for the planning, designing, and installation of the Manti City sewer project. Several months later, in May 1981, Call

again met with the mayor and the city council to present a proposed contract therefor. By its plain and obvious terms, the services contemplated by this contract included several phases. Phase I involved the preparation of a preliminary report and sewer study. Subsequent phases dealt with the design, supervision, installation, and other sewer engineering services. At this meeting, Call apparently read and referred to several portions of the proposed contract. Although neither the mayor nor any city council member read the contract at that time, the council unanimously voted to execute the agreement. The contract was then signed by the Manti City mayor and attested to by the city recorder.

While the summary minutes of that May 1981 council meeting reflected that the parties entered into an agreement for a sewer study, the plain and unambiguous language of the written contract itself emphasized that the agreement included engineering services for the design and installation of the sewer as well.

Subsequently, Call performed Phase I of the contract, and the preliminary study report was presented to Manti City in October 1981. Accompanying this report was a letter reemphasizing the extent of the sewer project agreed upon and stating:

> It has been a sincere pleasure working with you during the presentation of this report, and we look forward to an equally pleasurable association *during the final engineering and construction phases of this project.*

(Emphasis added.)

In contrast, Manti City claims it only agreed to Call's performance of a preliminary sewer study. Accordingly, in March 1982, the Manti City attorney informed Call that the contract was considered "null and void" by Manti City because the city had entered into it "by mistake." Manti City then proceeded to hire a new engineering firm to complete the sewer design and installation work, and Call filed suit.

At trial, the judge determined that while the contract in fact provided for the installation of and the complete engineering services for Manti City's sewer system project, Manti City did not understand the extent of the contract, and the parties entered into the agreement without a "meeting of the minds" and under a mutual mistake of fact.

II

■■■ Call argues on appeal that the trial court erred in finding no "meeting of the minds" between the parties to the contract. As stated in *Oberhansly v. Earle,*[1] it is a basic principle of contract law that there can be no contract without the mutual assent of the parties.[2] In this regard, the intentions of the parties to a contract are controlling, and generally those intentions will be found in the instrument itself. However, if a writing is not sufficient to establish meaning, resort may be had to extraneous evidence manifesting the intentions of the parties.[3]

Applying these principles to the case at hand, we first note that the written agreement was clear and unambiguous. Indeed, the provisions therein were reasonably straightforward, and the terms used were generally comprehensible to a lay person. Manti City, however, claims that its failure to read the contract was a proper defense to the contract's enforcement and validity. While the trial court did not enter specific findings of fact or conclusions of law supporting this contention, we nevertheless disagree.

■■■ Generally, one party to an agreement does not have a duty to ensure that the other party has a complete and accurate understanding of all terms embodied

---

1. 572 P.2d 1384 (Utah 1977).

2. *Id.* at 1386; *see also Pingree v. Continental Group of Utah, Inc.,* 558 P.2d 1317, 1321 (Utah 1976); *Morgan v. Board of State Lands,* 549 P.2d 695, 696 (Utah 1976); *B. & R. Supply Co. v. Bringhurst,* 28 Utah 2d 442, 444, 503 P.2d 1216, 1217 (1972).

3. 572 P.2d at 1386 (footnote omitted).

in a written contract.[4] Rather, each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it. A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense.[5] This rule is based upon the panoply of contract law upholding the principle that a party is bound by the contract which he or she voluntarily and knowingly signs.[6] In this respect, this Court has emphasized:

Ignorance of the contents of an instrument does not ordinarily affect the liability of one who signs it.... If a man acts negligently and in such a way as to justify others in supposing that the writing is assented to by him, he will be bound both at law and in equity, even though he supposes the writing is an instrument of an entirely different character.... [A] person who, having the capacity and an opportunity to read a contract, is not misled as to its contents and who sustains no confidential relationship to the other party cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it. If the contract is plain and unequivocal in its terms, he is ordinarily bound thereby.[7]

In the instant case, the trial court did not find that Call misrepresented the obligations of the respective parties under the contract.[8]

■ Manti City, however, contends that special circumstances excused its failure to read the agreement. Specifically, these alleged circumstances included Call's failure to show the city council the agreement prior to the day of its signing; the council's confidence and trust in Call; his reading aloud and explanation of only part of the agreement; and the harried nature of the council meeting at the time the contract was signed. We are not persuaded.

First, Manti City was apparently not pressured to enter into the contract. Rather, the city council had ample opportunity to examine the contract in as much detail as desired. Indeed, contrary to Manti City's allegation, the city recorder who attested to the contract testified that Call made no representation that the contract had to be executed on the evening it was in fact signed in order for the city to obtain an existing government grant to help pay for the preliminary study. Similarly, none of the other witnesses testified that Call stated the contract had to be immediately signed in order to obtain the government grant. Moreover, the record clearly indicates that the Natural Resources Community Impact Board had already approved the grant almost one month prior to the date the contract in question was actually executed.

Furthermore, it would be unreasonable for a person of ordinary intelligence, much less individuals with the education and experience of Manti City's representatives, to have misunderstood the contents and impact of this instrument upon even a cursory and casual reading thereof. Manti City had the opportunity to postpone the execution of the contract to another time and to seek legal advice or at least to read the contract before signing it. Therefore, we will not allow Manti City to avoid the contract by claiming its representatives had other things on their minds when they executed it.

Second, the city council's confidence in Call and his failure to read aloud the entire agreement does not in this case negate Manti City's duties and liabilities resulting from its execution of the contract. Under these circumstances, Manti City cannot be

---

4. *Resource Management Co. v. Weston Ranch & Livestock Co. Inc.,* 706 P.2d 1028, 1047 (Utah 1985).

5. *See id.; First Nat'l Bank & Trust Co. v. Stinchcomb,* 734 P.2d 852, 854 (Okla.Ct.App.1987).

6. *See National Bank v. Equity Investors,* 81 Wash.2d 886, 912–13, 506 P.2d 20, 36 (1973) (en banc).

7. *Garff Realty Co. v. Better Bldgs., Inc.,* 120 Utah 344, 349, 234 P.2d 842, 844 (1951) (quoting 12 Am.Jur. *Contracts* § 137 (1938)).

8. We note that the record also reflects that at trial below Manti City conclusively refuted any indication that it was claiming fraud or misrepresentation on behalf of Call.

heard to deny its execution of the contract, and the trial court's findings in this regard were clearly erroneous.

## III

Next, Call contends that the trial court erred in determining that the evidence supported a finding of mutual mistake of fact. The "mistake of fact" referred to by the court again appears to consist of Manti City's alleged misperception of the effect of the plainly worded sewer project contract. Such a mistake, however, if it existed, was not a mutual one. The record is clear that even if Manti City misunderstood the legal effect of the contract, this misunderstanding was not shared by Call and hence was not mutual.

While Manti City affirmatively waived arguing the existence of "mutual mistake" below, Manti City, nevertheless, claims on appeal that mistake in Call's mind is evidenced by a conversation John Call had with a councilwoman, the extent of which was outside the scope or content of the sewer contract; by the fact that nine to twelve months after the contract was executed, John Call discussed with the city council alternative methods of paying the engineering costs on the sewer line; and finally, by addition of an addendum to the contract which provided that Call would temporarily await proceeding on subsequent portions of the sewer installation pending readiness and authorization by Manti City. Even if Manti City had argued mutual mistake below, we remain unpersuaded.

First, witnesses' testimony about what they thought Call intended during January through May of 1982 when he spoke with the city council and one of its councilwomen cannot in this case be logically considered "clear and convincing evidence" of what Call intended eight to twelve months earlier.[9]

Second, as to Manti City's argument that the existence of the addendum evidenced "mistake" in Call's mind, Manti City did not rely upon or argue the effect of the addendum below. Also, Manti City did not offer evidence to show the addendum's import or that Call intended the addendum to be a condition precedent to enforcement and performance of the contract. Rather, according to a reading of the entire document, and in view of the record, the addendum was a means whereby Manti City could be released from pursuing the project if it was unable to acquire sufficient funding. The addendum did not provide a means whereby Manti City could choose to proceed with the project, avoid the valid agreement, and hire another engineer.[10]

Accordingly, a review of the record clearly indicates that the evidence presented at trial simply did not support the trial court's finding of mutual mistake.

## IV

Finally, Manti City argued below that the contract should be avoided under the theory of unilateral mistake. In this regard, we have held that under proper circumstances, rescission is available as a remedy for a unilateral mistake of fact. In doing so, we emphasized the following elements that must be established in order to obtain such relief:

1. The mistake must be of so grave a consequence that to enforce the contract as actually made would be unconscionable.

2. The matter as to which the mistake was made must relate to a material feature of the contract.

3. Generally the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake.

4. It must be possible to give relief by way of rescission without serious prejudice to the other party except the loss of

9. *See Briggs v. Liddell,* 699 P.2d 770, 773 n. 1 (Utah 1985).

10. We also note that the contract itself provided for fee negotiations and that evidence at trial indicated that after completion of the sewer study, Manti City paid Call at least one payment for subsequent work under the contract.

his bargain. In other words, it must be possible to put him in status quo.[11]

■ Viewing Manti City's evidence favorably, it was still deficient with respect to several elements, i.e., establishing that enforcement of the contract as made would be unconscionable; that the error occurred despite Manti City's exercise of due care in executing the contract; and that it was possible to give relief without severely prejudicing Call.

Accordingly, under the facts of this case, the trial court's findings of fact and conclusions of law were clearly erroneous, and this Court cannot affirm the result below.

This case is reversed and remanded to the trial court with instructions to determine plaintiff's damages and enter judgment in favor of Call.

DURHAM and ZIMMERMAN, JJ., concur.

ORME, Court of Appeals Judge: (concurring).

I agree with all that is said in the main opinion about "meeting of the minds," mutual mistake, unilateral mistake, and the effect of the city's failure to read and understand the contract it entered into with plaintiff.

I do not agree that the contract bindingly entered into, and enforceable in accordance with its proper interpretation, is unambiguous. If on no other basis, ambiguity results from this provision in the specially prepared addendum to the contract: "The Engineer will not proceed with additional phases of the project until authorization from the owner." It is undisputed such authorization was not forthcoming.

It may be that after extrinsic evidence was received and considered in an effort to resolve this ambiguity,[1] the proper conclusion would be that the provision was really a "subject to funding" clause. In my view, however, that conclusion does not, as the majority suggests, emerge from a plain reading of the contract.

On the other hand, Manti City concentrated its defense to plaintiff's action exclusively on theories which would, if accepted, invalidate the contract altogether. It did not plead, in the alternative, that even if the contract were determined to be enforceable, it had no further liability to plaintiff since it had authorized no work beyond the scope of Phase I of the project. The city did not argue ambiguity at trial, and it did not offer extrinsic evidence to assist in the interpretation of ambiguous terms. It cannot raise this theory for the first time on appeal, nor can it properly do so on remand. It follows, as the majority concludes, that remand for imposition of judgment against the city is the appropriate remedy. The amount of damages on remand should be calculated with reference to the contract as the city, in effect, conceded it to be and as the trial judge determined it to be assuming its validity—i.e., a contract for the installation of, and provision of all engineering services for, the complete sewer project.

On remand, however, plaintiff's claimed damages should be scrutinized. Since the city's attitude as concerned plaintiff's performance beyond Phase I was made known to plaintiff early on—albeit with reference to an inapplicable legal doctrine—the reasonableness of costs incurred by plaintiff in contemplation of its going forward and the timeliness and sufficiency of plaintiff's mitigation efforts should be evaluated with considerable care.

HOWE, J., concurs in the concurring opinion of ORME, J.

STEWART, Associate C.J., does not participate herein.

GREGORY K. ORME, Court of Appeals Judge, sat.

---

**11.** 699 P.2d at 773 (citing *Ashworth v. Charlesworth*, 119 Utah 650, 656, 231 P.2d 724, 727 (1951); *Hurst v. National Bond & Inv. Co.*, 96 Fla. 148, 117 So. 792, 809 (1928)).

**1.** *See, e.g., Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985); *Seashore's Inc. v. Hancey*, 738 P.2d 645, 647 (Utah Ct.App.1987).