R.L. WARNER, d/b/a Rick Warner Truckland, Plaintiff, Appellee, and Cross–Appellant,

v.

Kurt F. SIRSTINS, Defendant, Appellant, and Cross–Appellee.

No. 900644–CA.

Court of Appeals of Utah.

Sept. 14, 1992.

Robert W. Hughes, Midvale, for appellant.

Kenneth A. Okazaki, Purser, Okazaki & Berrett, Salt Lake City, for appellee.

Before GARFF, GREENWOOD and RUSSON, JJ.

## OPINION

GARFF, Judge:

Defendant, Kurt F. Sirstins, appeals the trial court's reformation of a contract for the sale of a truck and camper from plaintiff, R.L. Warner, d/b/a Rick Warner Truckland (Rick Warner), to Sirstins. Rick Warner cross appeals, challenging the trial court's denial of its request for attorney fees. We affirm.

## FACTS

Because Sirstins challenges the court's findings of fact, we consider the evidence in a light most favorable to the trial court and recite the facts accordingly. *Van Dyke v. Chappell*, 818 P.2d 1023, 1024 (Utah 1991). In June 1988, Rick Warner, through its sales representative, Merrill Stillman, negotiated with Sirstins concerning the sale of a truck and camper. The parties established a purchase price of $25,484.26 for the truck and $13,055.50 for the camper. As part of the transaction, they agreed that Sirstins would trade in a Chevrolet Suburban and a motor home toward the purchase of the truck and camper. The parties set the trade-in value of the Suburban at $14,200.00 and the trade-in value of the motor home at $30,000.00. At the time of the negotiations, Sirstins indicated, and Stillman later confirmed, that Sirstins owed over $25,000.00 on the motor home. The parties agreed that Rick Warner would pay off Sirstins's remaining debt on the motor home and subtract it from the vehicle's $30,000.00 trade-in value. They further agreed that Sirstins would pay the difference between the trade-in value of the Suburban and motor home and the purchase price of the truck and camper.

On June 30, 1988, the parties executed the agreement and finalized the sale when Sirstins delivered a check to Rick Warner for $6,394.00. Under the executed agreement, Sirstins received a combined setoff for the trade-in value of both the Suburban and the motor home against the purchase price of the truck. He also received a second setoff for the trade-in value of the Suburban against the purchase price of the camper. As a result, Sirstins received a total credit of $28,400.00 for the Suburban, which was double the agreed upon trade-in value.

In December 1988, after Rick Warner discovered that it had given Sirstins a double credit for the Suburban, a representative of Rick Warner contacted Sirstins about the error and requested an additional $13,055.76, which Sirstins refused to pay. Rick Warner subsequently sued Sirstins, claiming mutual mistake and seeking the equitable remedy of reformation of the agreement.

The case was tried to the court. After taking the case under advisement, the court issued a memorandum decision in which it ruled that the parties had made a "mutual mistake of material fact" in the contract and "that the contract should be reformed to reflect the intent of the parties." The court found in its decision that Rick Warner and Sirstins had a meeting of the minds on (1) the price to be charged for both the truck and camper, and (2) the trade-in allowance for the Suburban and motor home. The court also found that neither Rick Warner nor Sirstins intended that a "double credit" be given to Sirstins for the trade-in value of his Suburban. Finally, the court found that "[t]he amount of the payoff on the motor home was clearly indicated on the contract at the time it was entered into by the parties and [Sirstins] is charged with the knowledge of those items that appear on the contract." The court concluded that the contract should be reformed to reflect a single credit to Sirstins for the trade-in value of the Suburban. Thereafter, the court entered judgment in favor of Rick Warner for $13,055.76, together with interest and costs.

Prior to the court's entering judgment, Rick Warner filed a motion in which it claimed, pursuant to the terms of the contract, that it was entitled to an award of attorney fees. Sirstins responded with a memorandum opposing the motion. The court denied the motion for "the reasons stated in [Sirstins's] memorandum."

On appeal, Sirstins claims that the trial court abused its discretion in reforming the contract for mutual mistake. He also contends that the court clearly erred in finding that the parties' intentions were not reflected in the written agreement. Additionally, he argues that the court clearly erred in finding that he knew of the remaining debt of over $25,000.00 on the motor home. In the alternative, Sirstins contends that if there was a mistake, it was a unilateral mistake made by Rick Warner in drafting the agreement.

## MUTUAL MISTAKE

■ "A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain." *Robert Langston, Ltd. v. McQuarrie*, 741 P.2d 554, 557 (Utah App.), *cert. denied*, 765 P.2d 1277 (Utah 1987). To reform a contract, the party claiming mistake must prove "that the minds of both parties had been in agreement on a term which they mutually failed to incorporate into the writing." *Ingram v. Forrer*, 563 P.2d 181, 183 (Utah 1977). Parol evidence is admissible to show the writing did not conform to the intent of the parties. *Jensen v. Manila Corp. of the Church of Jesus Christ of Latter–Day Saints*, 565 P.2d 63, 64 (Utah 1977) (citing *Sine v. Harper*, 118 Utah 415, 429, 222 P.2d 571, 578–79 (1950)); *Grahn v. Gregory*, 800 P.2d 320, 327 n. 8 (Utah App.1990).

■ Findings of fact are not disturbed unless they are clearly erroneous, and due regard is given to the opportunity of the trial court to judge the credibility of the witnesses. Utah R.Civ.P. 52(a); *Van Dyke v. Chappell*, 818 P.2d 1023, 1024 (Utah 1991). Factual findings are clearly erroneous if they are without adequate evidentiary support or induced by an erroneous view of the law. *Western Capital & Sec. v. Knudsvig*, 768 P.2d 989, 991 (Utah App.), *cert. denied*, 779 P.2d 688 (Utah 1989). Conclusions of law are accorded no particular deference and are reviewed for correctness. *Grayson Roper Ltd. Partnership v. Finlinson*, 782 P.2d 467, 470 (Utah 1989); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

■ To successfully attack findings of fact, a party must first marshal all the evidence in support of the trial court's findings and then demonstrate that even when viewed in the light most favorable to the findings, the evidence is insufficient to support the findings. *Grayson Roper*, 782 P.2d at 470; *Scharf*, 700 P.2d at 1070. Although Sirstins has not met his burden of marshaling the evidence in support of the trial court's findings and then demonstrating that they are clearly erroneous, we feel compelled to address the pertinent issues.

■ At trial, Sirstins testified that neither he nor Rick Warner intended that he receive a double credit for the Suburban. He further testified that he knew prior to executing the agreement that he would receive a trade-in value of $14,200.00 for the Suburban, not the $28,400.00 he ultimately received. The understanding that Sirstins would receive a trade-in value of $14,200.00 constituted a basic assumption or vital fact upon which the parties based their bargain. In light of this evidence, the court did not clearly err in finding that the written instrument failed to conform to what both Sirstins and Rick Warner intended, namely, that Sirstins would receive a trade-in value of $14,200.00 for the Suburban.

■ In support of the trial court's finding that Sirstins knew he owed over $25,-000.00 on the motor home, Sirstins testified that he saw the payoff figure on the motor home when he signed the agreement. Furthermore, the court correctly disregarded Sirstins's claim that he did not understand the payoff figure in the agreement to be the amount owed by him on the motor home because Sirstins had a duty, before

signing the contract, to read and understand the payoff figure as a term of the contract. *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207–08 (Utah 1987); *Hottinger v. Jensen*, 684 P.2d 1271, 1274 (Utah 1984). "A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense." *John Call Eng'g*, 743 P.2d at 1208; *accord Garff Realty Co. v. Better Bldgs., Inc.*, 120 Utah 344, 349, 234 P.2d 842, 844 (1951). Because the court's finding regarding Sirstins's knowledge of the payoff figure is supported by the evidence as well as a correct view of the law, we do not disturb it.

Based on the findings of fact, as well as our review of the record, the trial court correctly concluded that there was a mutual mistake. Having affirmed the trial court's findings of fact and conclusion regarding mutual mistake, we now consider whether the court acted within its discretion in reforming the contract for mutual mistake.

## REFORMATION

"Reformation of an instrument for mutual mistake of fact is an equitable remedy that has long been recognized." *Guardian State Bank v. Stangl*, 778 P.2d 1, 4–5 (Utah 1989). Although a court by virtue of its equitable powers has discretion to reform an instrument, such "discretion is narrowly bounded." *Cunningham v. Cunningham*, 690 P.2d 549, 552 (Utah 1984); *accord Briggs v. Liddell*, 699 P.2d 770, 772 (Utah 1985). The power to reform a written instrument for mutual mistake exists when any one of the following circumstances is satisfactorily proved: (1) the instrument as made failed to conform to what both parties intended; (2) the claiming party was mistaken as to its actual content and the other party, knowing of the mistake, kept silent; or (3) the claiming party was mistaken as to its actual content because of fraudulent affirmative behavior by the other party. *Mabey v. Kay Peterson Constr. Co.*, 682 P.2d 287, 290 (Utah 1984); *Jensen v. Manila Corp. of the Church of Jesus Christ of Latter–Day Saints*, 565 P.2d 63, 64–65 (Utah 1977).

In the case at bar, the written instrument failed to conform to what Rick Warner and Sirstins intended. Consequently, the trial court acted within its discretion in reforming the contract to reflect their intention that Sirstins receive only a single credit for the trade-in value of the Suburban.

## INTEREST

Sirstins argues that the trial court, after reforming the agreement, erred in awarding prejudgment interest from the date the agreement was executed. According to Sirstins, interest, if any, should have accrued from the date of reformation.

The trial court's determination on the interest issue is one of law, which we review for correctness. *Hermes Assocs. v. Park's Sportsman*, 813 P.2d 1221, 1223 (Utah App.1991); *Vali Convalescent & Care Insts. v. Division of Health Care Fin.*, 797 P.2d 438, 444 (Utah App.1990).

Although a court, sitting in equity, exercises discretion in granting or denying relief, *Women's Fed. Sav. and Loan Ass'n v. Nevada Nat. Bank*, 673 F.Supp. 401, 404 (D.Nev.1987); *Swartz v. Atkins*, 315 S.W.2d 393, 395 (Tenn.1958), it does not have the authority to ignore existing principles of law in favor of its view of the equities. *Nordling v. Cochran*, 780 P.2d 805, 806 (Or.Ct.App.1989); *see also Jarvis v. State Land Dep't*, 106 Ariz. 506, 510, 479 P.2d 169, 173 (1970) ("equity obeys and conforms to the law's general rules and policies whether the common law or statute law").

As a general rule, the reformation of a written contract relates back and takes effect from the date of the contract's original execution. *Hampton Sch. Dist. No. 1 v. Phillips*, 251 Ark. 90, 470 S.W.2d 934, 936 (1971) (citing *Mason v. Jarrett*, 218 Ark. 147, 234 S.W.2d 771, 773 (1950)); *see also Katzenberger v. State*, 735 P.2d 405, 408 n. 1 (Utah App.1987) (relation-back rule applied to reformation of a deed). Consistent with the relation-back rule of

reformation, the trial court in the instant case correctly awarded prejudgment interest from the date the parties executed the agreement.

## ATTORNEY FEES

Rick Warner cross appeals, claiming the trial court erred in not awarding it attorney fees pursuant to the terms of the agreement. The agreement provides, "In the event that it becomes necessary for Dealer to enforce any of the terms and conditions of this order, buyer agrees to pay reasonable collection fees and costs and/or attorney's fees and court costs whether suit is filed or not."

According to the well-established rule in Utah, attorney fees cannot be recovered unless provided for by statute or by contract. *Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d 667, 671 (Utah 1982). "Provisions in written contracts providing for the payment of attorney's fees should ordinarily be honored by the courts." *Soffe v. Ridd*, 659 P.2d 1082, 1085 (Utah 1983). Thus, Rick Warner would ordinarily be entitled to attorney fees under the contract. However, an exception to the rule arises when, as in this case, a reformation of the contract is required and thus principles of equity are invoked which address themselves to the conscience and discretion of the court. *See Fullmer v. Blood*, 546 P.2d 606, 610 (Utah 1976); *Jenkins v. Bailey*, 676 P.2d 391, 393 (Utah 1984).

The equities in the case before us are first, that the form upon which the parties reduced their agreement is a standardized contract form used by Rick Warner in the ordinary course of its business, and second, that Rick Warner, through its sales representative, filled in the blanks of the contract form. As between the parties, Rick Warner was in the better position to prevent the error in reducing the parties' intentions to writing. Therefore, the responsibility for the error falls primarily upon Rick Warner. *See Swartz v. Atkins*, 204 Tenn. 23, 315 S.W.2d 393, 395 (1958) ("Generally in considering the equity of the situation ... the Court looks to the showing or ability of the one claiming the equity to have prevented the prejudicial situation in which he finds himself."). After having assessed the circumstances presented in the instant case, we are not persuaded that the trial court abused its discretion in denying Rick Warner's request for attorney fees. *Cf. Fullmer*, 546 P.2d at 610 (reviewing for abuse of discretion trial court's refusal to award attorney fees in case in which principles of equity were invoked and contract provided for attorney fees).

Finally, Rick Warner requests attorney fees on appeal. In support of its request, Rick Warner cites to *Management Servs. Corp. v. Development Assocs.*, 617 P.2d 406 (Utah 1980), in which the Utah Supreme Court adopted the rule that a provision in a contract providing for attorney fees includes attorney fees incurred by the prevailing party on appeal. *Id.* at 409.

In the instant case, however, in which Rick Warner prevailed on the basis of a mistake it primarily created, the equities that precluded attorney fees at trial also apply on appeal. We therefore conclude that Rick Warner is not entitled to an award of attorney fees on appeal.

In sum, the trial court did not clearly err in finding that the written instrument failed to conform to what the parties intended and that Sirstins knew of the remaining debt of over $25,000.00 on the motor home. The court, based on the findings, correctly concluded that there was a mutual mistake. Furthermore, the court did not abuse its discretion in reforming the agreement, and it correctly awarded prejudgment interest from the date of the agreement's original execution. Finally, the court did not abuse its discretion in refusing to award Rick Warner attorney fees. Accordingly, the trial court's judgment is affirmed and we deny Rick Warner's request for attorney fees on appeal.

GREENWOOD and RUSSON, JJ., concur.